Robert S. Schachter (*pro hac vice*)
Susan Salvetti (*pro hac vice*)
Jessica C. Hermes (*pro hac vice*)
**ZWERLING, SCHACHTER & ZWERLING, LLP**
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
rschachter@zsz.com
ssalvetti@zsz.com
jhermes@zsz.com

Ahmet Seyithanoglu (*pro hac vice*)
**SEYITHAN LAW PC**
5 Penn Plaza, 23rd Floor
New York, NY 10001
Telephone: (216) 414-8426
as@seyithanlaw.com

Barrett S. Litt (SBN 44527)
**MCLANE, BEDNARSKI + LiTT, LLP**
975 East Green Street
Pasadena CA 91106
Telephone: (626) 844-7660
blitt@mbllegal.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ahmet S. Yayla, Selcuk Atak, and Murat Kalyoncu, Huseyin Mercan, and Mevlut Hilmi Cinar, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>                    v.<br><br>Refinitiv US LLC, Refinitiv US Organization LLC, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and the London Stock Exchange Group PLC,<br><br>                                    Defendants. | Case No. 8:23−cv−00830−CJC−JDE<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Ahmet S. Yayla ("Yayla"), Selcuk Atak ("Atak"), Murat Kalyoncu ("Kalyoncu"), Huseyin Mercan ("Mercan"), and Mevlut Hilmi Cinar ("Cinar" and, together with Yayla, Atak, Kalyoncu, and Cinar, "Plaintiffs"), individually, and on behalf of all others similarly situated, by their attorneys, allege the following against Defendants Refinitiv US LLC, Refinitiv US Organization LLC, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and the London Stock Exchange Group plc ("LSEG") ("Defendants"), based on personal knowledge as to themselves and upon the investigation of counsel as to the other allegations.

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this action as a class action on behalf of themselves, and all others similarly situated, who have been identified by the Defendants as terrorists, and in some instances denied access to various financial websites and accounts because of the actions of the Defendants in listing Plaintiffs and the members of the proposed classes (the "Classes", defined below) as terrorists on a subscription-only database-product, known as "World-Check," "World-Check Data," "World-Check database" and/or "World-Check One" (interchangeably "World Check") which is owned, operated, researched, maintained, updated, monitored, published, distributed, sold, marketed, and/or advertised by Defendants. The World Check information is derived from, and generated by, the Turkish government, which the U.S. government has disparaged.

2.    Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1962(c)-(d)), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), the consumer protection statutes of the States of Illinois (815 ILCS §§ 505/1, *et seq.* and 815 ILCS §§ 510/1, *et seq.*) and New York (N.Y. GBL § 349), and the defamation statutes and common law of California, Illinois, Maryland, New Jersey, New York, Pennsylvania, and Virginia.

3.    Plaintiffs have been and/or continue to be subject to financial and

FIRST AMENDED CLASS ACTION COMPLAINT

reputational damage and seek monetary and injunctive relief.

## II.    BACKGROUND

4.      In April 2021, and again in December 2021, the government of the Republic of Turkey ("Turkey" or "Turkish government") adopted two decisions, Decision No. 2021/1 and Decision No. 2021/5, respectively. The Decisions froze assets located in Turkey of 660 individuals who are claimed to be affiliated with the Gülen Movement ("GM").

5.      Decision Nos. 2021/1 and 2021/5 were ostensibly adopted in accordance with the Turkish government's Law on the Prevention of the Financing of Terrorism No. 6415.

6.      The 660 individuals named in Decision Nos. 2021/1 and 2021/5 included journalists, academics, authors, teachers, and lawyers targeted for politically motivated persecution.

7.      President Recep Tayyip Erdoğan ("Erdoğan"), a member of the Adalet ve Kalkınma Partisi ("AKP")[1], is, and at all relevant times was, the leader of the Turkish government.

8.      The AKP routinely describes opponents, including members of the GM, as "terrorists."

9.      The GM is a faith-based group founded in the 1960s by Fethullah Gülen ("Gülen").

10.     Between 2002 and 2013, the GM and AKP were close allies with Erdoğan and his ministers, who praised the GM in public and granted public funds to GM-affiliated educational and health institutions.

11.     According to the Commissioner for Human Rights of the Council of Europe, "There seems to be general agreement that it would be rare for a Turkish

---

[1] The AKP is a political party in Turkey established in 2001, which has been in power since the general elections of 2002.

-2-

FIRST AMENDED CLASS ACTION COMPLAINT

citizen never to have had any contact or dealings with [the GM]," which had "a pervasive and respectable presence in all sectors of Turkish society, including religious institutions, education, civil society and trade unions, media, finance and business".

12.    In the early 2010s, the GM fell out of favor with the AKP, resulting in Turkish prosecutors alleging offenses of "commanding an armed organization" under Article 314 of the Turkish Penal Code against hundreds of thousands of individuals. Over 8,000 charges were filed in 2013; 146,731 charges were filed in 2017;115,753 charges were filed in 2018;54,464 charges were filed in 2019; and 33,885 charges were filed in 2020.

13.    The situation worsened after the 2016 coup attempt in Turkey, with the application of anti-terrorism laws becoming more abusive and arbitrary.

14.    The Turkish government blamed the attempted coup on Gülen.

15.    Gülen has denied any involvement in the attempted coup.

16.    The Turkish government also accused the United States of orchestrating the attempted coup with the assistance of members of the GM, which the U.S. State Department has said is "wholly false".

17.    According to a legal opinion submitted to the European Court of Human Rights by the Italian Helsinki Committee, after 2016, public prosecutors and courts across Turkey adopted a list of variables to determine whether an individual is a member of GM, which include the following:

   a.  depositing money at Bank Asya;

   b.  using or downloading the Bylock messaging application;

   c.  engaging in certain social media activity and visiting certain websites;

   d.  donating to relief organizations with alleged GM links, such as Kimse Yok Mu;

-3-

FIRST AMENDED CLASS ACTION COMPLAINT

   e.  being a resident or a student in schools, universities, or dormitories, or sending children to schools, closed under the state of emergency because of alleged GM links; and

   f.  being a manager, employee, or member of a trade union, association, foundation, or company that has been closed, dissolved, or seized under the state of emergency because of its alleged GM links.

18.    In July 2017, the Turkish Court of Cassation[2] adjudicated that the GM, known by the Turkish government as Fethullahçı Terör Örgütü/Paralel Devlet Yapılanması ("FETÖ"), is a terrorist organization.

19.    None of the variables used to identify members of the GM comport with international treaties, international human rights conventions, or legal frameworks on combatting terrorism in the UN, EU, or Council of Europe.

20.    For instance, the United Nations Human Rights Council Working Group on Arbitrary Detention found that Turkish authorities who accused Levent Kart, the Dean of the Medical Faculty at Fatih University, of being a member of FETÖ arbitrarily detained Mr. Kart.

21.    Among the reasons for their conclusion, the Working Group stated that "the essence of the allegations against Mr. Kart is his alleged allegiance with the [GM] which, according to the [Turkish] Government, is evidenced by such regular daily activities as working in a university, having a bank account, and using a communication application. However, the Working Group notes the [Turkish] Government's failure to explain how any of these three alleged activities amounted to a criminal act."

22.    Many of the supposed Gülenists have only tenuous links to the GM, such as having an account at Bank Asya.

23.    Amnesty International's June 2021 report entitled "Turkey: Weaponizing Counterterrorism: Turkey Exploits Terrorism Financing Assessment to

---

[2] The Republic of Turkey's highest court of appeal.

-4-

FIRST AMENDED CLASS ACTION COMPLAINT

Target Civil Society" explains that "[t]he constellation of counterterrorism laws currently in force in Turkey includes unacceptably broad definitions of 'terrorism' and 'terrorist offender.'"   Specifically, the report noted, "Turkish law defines 'terrorism' in terms of an organization's political aims, rather than by the specific conduct of an offender, *i.e.*, encompassing specific intent to cause death or serious bodily harm."  As a result, "it has become a routine judicial practice to prosecute and convict people for broad and undefined terrorism-related offences without credible and sufficient evidence and on the sole basis of their real or perceived political opinions."

24.    Despite the allegations in ¶ 23, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

25.    The European Court of Human Rights found that Turkey abused its anti-terrorism provisions, namely Articles 220 and 314 of the Turkish Penal Code, and that the Turkish judiciary has applied these provisions in ways that fundamentally breach the European Convention on Human Rights.

26.    Despite the allegations in ¶ 25, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

27.    The United States does not recognize the GM as a terrorist organization.

28.    The United States Department of State said in its "Country Reports on Terrorism 2019: Turkey," that FETÖ is not designated a terrorist organization in the United States.

29.    The United States Department of State's "2021 Country Reports on Human Rights Practices: Turkey" said that, since the coup attempt in 2016, the Turkish government has dismissed or suspended thousands of civil servants and government workers, including more than 60,000 police and military personnel and more than 4,000 judges and prosecutors, has arrested or imprisoned more than 95,000

-5-

citizens, and closed more than 1,500 non-governmental organizations on "terrorism-related" grounds, mostly due to alleged ties to the GM.

30.    Despite the allegations in ¶¶ 27-29, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

31.    According to the Turkish Minister of the Interior, Süleyman Soylu, as of February 20, 2021, 622,646 individuals were subject to criminal investigations over their alleged membership in an armed terrorist organization because of their links to the GM, with 301,932 of those individuals detained by the police.

32.    These numbers make Turkey the country with the highest number of inmates in the world convicted of terrorism-related offenses, with more than 95% of inmates sentenced for terrorism located in Turkish prisons, according to a Council of Europe report.

33.    Individuals allegedly associated with the GM have disappeared for long periods.    For instance, Hüseyin Galip Küçüközyiğit, a former civil servant, disappeared in Ankara on December 29, 2020, and it was not until July 14, 2021, that Turkish authorities informed his family that he was being held in pre-trial detention. Another former civil servant, Yusuf Bilge Tunç, remained missing after he disappeared in August 2019.

34.    The United Nations Human Rights Council Working Group on Arbitrary Detention, in its September 25, 2020, Opinion No. 47/2020, expressed concern that the cases against alleged GM members "may constitute crimes against humanity."

35.    Despite the allegations in ¶ 34, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

36.    The Turkish government does not consider those in custody for alleged GM ties to be political prisoners and does not permit access to them by human rights

FIRST AMENDED CLASS ACTION COMPLAINT

or humanitarian organizations.

37.     The United Nations Council Working Group on Arbitrary Detention found that Turkey had arbitrarily detained an individual allegedly associated with the GM in violation of the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights due to her detention based on political or other opinions.

38.     Many of these investigations and detentions used questionable evidentiary standards and were without the full due process provided for under the law, with some defendants denied access to the evidence underlying the accusations against them.

39.     Adequate representation has also been a concern since the Turkish government's crackdown on members of the GM. Lawyers have been hesitant to take the cases of those accused of GM ties for fear of government reprisal, including prosecution, since many lawyers defending accused terrorists have faced criminal charges themselves.

40.     The independence of the Turkish judiciary is questionable, having lost nearly one-third of its members following the 2016 coup attempt because of the government suspending, detaining, or firing judges accused of being affiliated with the GM.

41.     In addition to detention and other criminal actions against alleged members of the GM, Turkey has seized and closed hundreds of businesses accused of links to the GM.

42.     Persecution of members of the GM has extended beyond Turkey's borders and has included kidnappings and transfers without due process of alleged members.

43.     Bekir Bozdag, Turkey's deputy prime minister boasted in 2018 that Turkish secret agents in eighteen countries had seized eighty Turks suspected of having links to the GM.

FIRST AMENDED CLASS ACTION COMPLAINT

44. In July 2021, Erdoğan announced that Turkish intelligence forces captured and returned to Turkey Orhan Inandi from the Kyrgyz Republic.

45. Mr. Inandi is the head of the Sepat education network, which is associated with the GM. The Kyrgyz Ministry of Foreign Affairs stated Kyrgyz authorities did not cooperate or have knowledge of the rendition[3] of Mr. Inandi, who is a dual Turkish and Kyrgyz citizen, and requested that Turkey return him.

46. In May 2021, Turkish authorities released a statement that Selahaddin Gülen, a nephew of Gülen, was in government custody after he was captured by the country's intelligence forces in Kenya.

47. Human Rights Watch reported that Kenyan police arrested him in October 2020 because of an INTERPOL red notice from Turkey and that Kenya opened extradition proceedings against him. The INTERPOL red notice was issued for an alleged child molestation case, for which Mr. Selahaddin Gülen had been acquitted in 2008. Kenyan authorities did not confirm their involvement in this rendition.

48. Turkey has sent at least 1,022 extradition requests to 109 countries about perceived members of the GM, and none were accepted.

49. The Turkish government has attempted to abuse INTERPOL's notice mechanism to track "Gülenists", but INTERPOL has denied 839 red notice requests submitted by Turkey due to the political nature of these requests.

50. In 2016, Turkey sent an extradition request to the United States for

---

[3] Rendition is defined as "[t]he return of a fugitive from one state to the state where the fugitive is accused or was convicted of a crime" or "[t]he transporting of a prisoner or fugitive from one jurisdiction to another that has rightfully requested custody," and can be an "extraordinary rendition", defined as "[t]he transfer, without formal charges, trial, or court approval, of a person suspected of being a terrorist or supporter of a terrorist group to a foreign country for imprisonment and interrogation on behalf of the transferring country." Further, "[w]hen an innocent person is subjected to extraordinary rendition, it is also termed *erroneous extradition.* When a transfer is made to a country notorious for human-rights violations, it may be colloquially termed *torture by proxy* or *torture flight.*" *See* RENDITION, Black's Law Dictionary (11th ed. 2019).

-8-

FIRST AMENDED CLASS ACTION COMPLAINT

Gülen.

51.     The United States declined to extradite Gülen, citing a lack of credible evidence.

52.     Turkey resorted to a covert influence effort to convince the government of the United States to extradite Gülen.

53.     In 2021, the Fourth Circuit Court of Appeals upheld an Eastern District of Virginia jury verdict convicting a man of acting as an agent of the Turkish government within the United States without disclosing that relationship to the United States government.

54.     According to court records, he conspired to act covertly within the United States on instructions of the Turkish government to influence politicians and public opinion publicly and privately in the United States against Gülen with the goal of obtaining his extradition.

55.     News reports have said the Turkish government also spoke with former National Security Adviser to former President Donald Trump, Michael Flynn, about either kidnapping or rendering Gülen to Turkey or using his influence as National Security Adviser to effectuate his extradition.

56.     This was not the first time Turkey requested that the United States extradite Gülen, having previously issued an arrest warrant and requesting that the United States extradite Gülen in 2014.

57.     The Turkish government has limited the mobility of some of its citizens at home and abroad, due to their alleged association with the GM, by cancelling more than 230,000 passports and not permitting GM members to renew their passports or have passports issued by Turkish consulates.

58.     A March 2018 report by the Office of the United Nations High Commissioner for Human Rights found that there were serious due process violations with respect to the designation by the Turkish authorities that individuals had links or connections to FETÖ/PDY without describing the nature of such links and without

-9-

providing specific evidence or conducting investigations with respect to the individuals designated.

59.    Despite the allegations in ¶ 58, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

60.    A 2019 report by Human Rights Watch has also identified that charges and sanctions connected with FETÖ/PDY are politically motivated. Under the circumstances, the report cautioned that no weight should be placed on the reported justification for sanctions without separate and independent verification.

61.    Despite the allegations in ¶ 60, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

62.    In 2017, Reuters Limited, a predecessor to Defendant Refinitiv Limited settled a case brought by the Finsbury Park Mosque for damages caused by the defamatory listing of the mosque in the "terrorism" category in World-Check.

63.    Related to the settlement, counsel for Reuters Limited made a statement in open court, saying, "By its offer of amends the Defendant has admitted that the profile report that it published made the false allegation that there were grounds to suspect that the Claimant had continued connections to terrorism…. The Defendant has removed the defamatory allegations in question and has agreed to pay substantial damages to the Claimant and the Claimant's legal costs."

64.    Defendants' website lseg.com describes World-Check as "delivering accurate and reliable information" and that its researchers rely on information from "reliable and reputable sources."

65.    World-Check's privacy statement claims to "have in place robust controls designed to ensure that information about you on World-Check is accurate, relevant and not excessive" and that World-Check "compl[ies] with detailed research and screening processes for sourcing World-Check information and we monitor

-10-

compliance with these processes."

66.    World-Check's privacy statement also claims World-Check "make[s] extensive efforts to prevent inaccurate, outdated, irrelevant or excessive personal information being processed on World-Check."

67.    However, a VICE News investigation in 2016 found instances of World-Check relying on unreliable sources, such as partisan blogs and websites.

68.    World-Check relies on inaccurate and unreliable information from Turkish government sources, such as the Turkish Ministry of the Interior's terrorist list, to determine which persons to flag as associates of FETÖ.

69.    Defendants' customers, such as governments and intelligence agencies, banks and other financial intuitions, pre-employment vetting agencies, law firms, and, on information and belief, commerce platforms, credit card companies, and other companies, use and rely on the assertions by Defendants that the information on World-Check is accurate and reliable.

70.    On information and belief, the information provided by World-Check was, and is, relied on by World-Check's subscribers including, eBay, Inc., Citibank, N.A, Wells Fargo & Company, Amazon.com, Inc., MasterCard, Inc., JPMorgan Chase & Co., California Bank & Trust, Bank of America, and other financial institutions doing business throughout the United States whose identities are currently unknown to Plaintiffs that have closed accounts of and/or otherwise refused to do business with the Plaintiffs and members of the Classes (defined below) who were flagged by World-Check as associates of FETÖ.

71.    The Financial Action Task Force ("FATF"), an intergovernmental organization founded by the Group of Seven[4], has explained the consequences of incorrect implementation of anti-terrorism measures on the targets of these ostensible compliance measures.  In papers entitled "High-Level Synopsis of the Stocktake of

---

[4] The Group of Seven (G7) is an international forum consisting of the seven nations with the largest advanced economies – Canada, France, Germany, Italy, Japan, the United Kingdom, and the United States – and the European Union.

-11-

the Unintended Consequences of the FATF Standards" (Oct. 27, 2021) and "Opinion of the European Banking Authority on 'de-risking'" (Jan. 5, 2022), FATF stated "de-risking can lead to adverse economic outcomes or amount to financial exclusion. Financial exclusion is of concern, as access to at least basic financial products and services is a pre-requisite for participation in modern and economic and social life."

72.    Despite the allegations in ¶ 71, Defendants listed the names of Plaintiffs and members of the Classes in World-Check and included in World-Check information provided by the Turkish government labeling them as terrorists.

73.    According to a February 4, 2016, article in VICE News titled "VICE News Reveals the Terrorism Blacklist Secretly Wielding Power Over the Lives of Millions," even if an individual learns he or she is flagged on World-Check, they are unlikely to convince Defendants to delist them.

74.    Two anonymous "senior World-Check employees" in that same article said that in their "over eight years they had not seen a single case where an individual successfully challenged their terror designation."

### III.    WORLD-CHECK

75.    On information and belief, customers of the Defendants use and rely on the World-Check product to meet their regulatory obligations.

76.    World-Check is a subscription-only database of persons and entities to help its subscribers comply with know your customer, anti-money laundering, countering financial terrorism, and anti-bribery corruption laws and regulations.

77.    As of 2016, 300 government and intelligence agencies, 49 of the 50 biggest banks, pre-employment vetting agencies, and 9 of the top 10 global law firms, subscribed to World-Check.

78.    On information and belief, World-Check customers include eBay, Inc., Citibank, N.A., Wells Fargo & Company, Amazon.com, Inc., MasterCard, Inc., JPMorgan Chase & Co., California Bank & Trust, and Bank of America, and numerous other financial institutions doing business throughout the United States

FIRST AMENDED CLASS ACTION COMPLAINT

1  whose identities are currently unknown to Plaintiffs.

2      79.    Among the reasons a person may appear in World-Check is their alleged

3  association with FETÖ.

4      80.    World-Check includes an "individual" category, which identifies people

5  accused, investigated, arrested, indicted, detained, interrogated, or subjected to trial

6  for crimes, but not yet convicted; politically exposed persons and their close relatives;

7  individuals appearing on law enforcement lists, the Office of Foreign Assets Control,

8  or INTERPOL or are reported as Disqualified Directors; and close relatives of

9  politically exposed persons.

10     81.    World-Check also includes a "Special Interest" category, which

11  encompasses over sixty tags meant to provide a more granular view of the reason for

12  inclusion on the database, such as "Absconder or Fugitive" and "Explicit Sanctions."

13     82.    Defendants, individually and collectively, consciously, and

14  intentionally aimed and directed their World-Check related activities at financial,

15  commercial and other entities operating, transacting, or doing business within the

16  United States and California, with the understanding and intent that such entities

17  operating, transacting, or doing business within the United States and California

18  would subscribe to their World Check product and rely and act on information

19  contained in World-Check.

20  **IV.   PARTIES**

21

22      **A.    The Defendants**

23          **1.   Defendant Refinitiv US LLC**

24     83.    Defendant Refinitiv US LLC is a private company incorporated in

25  Delaware.

26     84.    Defendant Refinitiv US LLC's principal business office is 28 Liberty

27  Street, New York, NY 10005.  It has offices at 6080 Center Drive, Suite 725, Los

28  Angeles, California 90095, 1440 Chapin Avenue, Suite 205, Burlingame, CA 94010,

-13-

FIRST AMENDED CLASS ACTION COMPLAINT

and 50 California Street, San Francisco, CA 94111.

85.    The principal business of Defendant Refinitiv US LLC is to serve as the United States operating company of Refinitiv.

86.    Defendant Refinitiv US LLC is involved in the sales and marketing of subscriptions to World-Check in the United States.

87.    Defendant Refinitiv US LLC is a wholly owned subsidiary of Defendant LSEG.

## 2. <u>Defendant Refinitiv US Organization LLC</u>

88.    Defendant Refinitiv US Organization LLC is a private company incorporated in Delaware with its principal business office at 28 Liberty Street, New York, NY 10005.

89.    Defendant Refinitiv US Organization LLC is a subsidiary of Defendant Refinitiv US LLC and is ultimately a wholly owned subsidiary of Defendant LSEG.

90.    Refinitiv US Organization LLC is an intellectual property holding company that holds a sub-license from Financial & Risk Organisation Limited, a subsidiary of LSEG, authorizing the sale and distribution of World-Check in the United States.

91.    Refinitiv US Organization LLC is responsible for providing, maintaining, and updating the information, databases, software applications, platform and documentation for the Products.

## 3. <u>Defendant Refinitiv Limited</u>

92.    Defendant Refinitiv Limited is a private company incorporated in the United Kingdom and registered in England and Wales.

93.    The address of the registered office of Defendant Refinitiv Limited is Five Canary Square, Canary Wharf, London, England, E14 5AQ, United Kingdom.

94.    Defendant Refinitiv Limited exercises operational and editorial control over the content in World-Check and maintains it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be

-14-

included in World-Check, and exercising control and authority regarding the inclusion or exclusion of any content in World-Check.

95.    Defendant Refinitiv Limited operates World-Check and generates the information contained in it, as is evidenced by the Declaration of Timothy David Knowland in Support of Defendant Refinitiv US LLC's Motion to Dismiss Pursuant to FRCP 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) (ECF 32-2).

96.    Defendant Refinitiv Limited licenses World-Check to Financial & Risk Organisation Limited, a subsidiary of LSEG, who sub-licenses World-Check to Refinitiv US Organization LLC, a subsidiary of Defendant Refinitiv US LLC, for the sale and distribution of World-Check in the United States.

97.    Defendant Refinitiv Limited is a wholly owned subsidiary of Defendant LSEG.

98.    On information and belief, Defendant Refinitiv Limited and Defendant Refinitiv US regularly interact regarding World-Check and information contained in it, directly or through LSEG.

### 4.  Defendant Global World-Check Holdings (Nominee) Ltd.

99.    Defendant Global World-Check Holdings (Nominee) Ltd. is a private company incorporated in the United Kingdom and registered in England and Wales.

100.   The address of the registered office of Defendant Global World-Check Holdings (Nominee) Ltd. is Five Canary Square, Canary Wharf, London, England, E14 5AQ, United Kingdom.

101.   Defendant Global World-Check Holdings (Nominee) Ltd. manages business operations and research for World-Check, including data governance, data quality assurance, and management of third-party data providers.

102.   Defendant Global World-Check Holdings (Nominee) Ltd. is a subsidiary of Defendant Refinitiv Limited and is ultimately a wholly owned subsidiary of Defendant LSEG.

FIRST AMENDED CLASS ACTION COMPLAINT

**5.  Defendant LSEG**

103.   On January 29, 2021, Defendant LSEG acquired its co-Defendants from Thomas Reuters and a consortium of private equity funds led by Blackstone.

104.   Defendant LSEG is a publicly owned company organized under the laws of the United Kingdom.

105.   The principal place of business of Defendant LSEG is 10 Paternoster Square, London, England, EC4M 7LS, United Kingdom.

106.   Defendant LSEG has 16 offices in the United States, including one at 6080 Center Drive, Ste. 725, Los Angeles, California 90095, the same location as Refinitiv US LLC.

107.   Defendant LSEG is a leading provider of global financial markets infrastructure and data and is the parent company of Defendants Refinitiv US LLC, Refinitiv US Organization LLC, Refinitiv Limited, and Global World-Check Holdings (Nominee) Ltd.

**B.     Plaintiffs**

108.   Yayla is a resident of Pennsylvania.

109.   Yayla is a professor of cybercrime, homeland security, and terrorism and counterterrorism and teaches at universities.

110.   Atak is a resident of New Jersey.

111.   Before his accounts were closed, Atak was a businessperson selling electronics online through eBay and Amazon.

112.   Before his accounts were closed, Atak was in the process of entering a business partnership with an investor to develop a new laptop model and start a trade-in business online.

113.   After his accounts were closed, Atak lost his business and has had to work as a ride-share driver.

114.   Kalyoncu resides in the Central District of California.

115.   Kalyoncu is a businessperson in wholesale foods.

FIRST AMENDED CLASS ACTION COMPLAINT

116.  Mercan resides in the Central District of California.

117.  Mercan is a businessperson, who sells products primarily through Amazon.

118.  Cinar is a resident of Illinois.

119.  Cinar is the founder and CEO of a company providing services in international trade/investment consulting, brand and reputation management, licensing, marketing, public relations, accounting, and wealth management.

120.  Plaintiffs are each former residents of Turkey.

121.  In two decisions, in April and December 2021, described above in ¶ 4, the Turkish government targeted, Plaintiffs for politically motivated persecution by freezing their assets in Turkey ostensibly under the Law on the Prevention of the Financing of Terrorism, no. 6415.

122.  Plaintiffs have never been involved in any activity relating to a terrorist organization.

123.  Defendants compiled and distributed records of each Plaintiff through World-Check.

124.  The Plaintiffs face ongoing harm and damage due to their designations on Defendants' World-Check database.

**1. <u>Allegations Specific to Yayla</u>**

125.  At the end of 2021, Yayla was flagged on World-Check as "non-conviction terror", with the Special Interest Categories "Terror Related; Frozen and Seized Assets."

126.  On March 29, 2022, Yayla sent a message to the Refinitiv Privacy Team, requesting removal of his record from World-Check.

127.  Yayla stated in his message to Defendants that he is an expert in terrorism, counterterrorism, and intelligence, teaching these topics in the United States, and that he is not a terrorist, but is a victim of the Erdoğan government.

128.  On April 29, 2022, Defendants responded to Yayla's request for

-2-

FIRST AMENDED CLASS ACTION COMPLAINT

removal by refusing to remove his record and by proposing a so-called compromise in which they would change Yayla's record to state he is an individual who is a "[r]eported associate [of FETÖ]" and would change the Special Interest Categories so that Yayla was tagged to "Absconder or Fugitive; Explicit Sanctions."

129.   Despite Yayla's rejection of the compromise, these changes were made to Yayla's World-Check profile.

130.   On May 1, 2022, Yayla again requested that Defendants remove his information from World-Check.

131.   In his message to Defendants, Yayla stated that Turkey's allegations that he is a terrorist are political in nature and that the Turkish government has no judicial verdict against him.

132.   Defendants rejected Yayla's request on May 3, 2022.

133.   On March 18, 2023, eBay, Inc. closed Yayla's accounts.   On information and belief, eBay's closure of Yayla's accounts was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey.

134.   On February 9, 2022, Citibank, N.A. sent Yayla a letter informing him that it closed his accounts.  On information and belief, Citibank, N.A.'s closure of Yayla's accounts was because of the information contained in World-Check regarding his alleged terrorist-related conduct in Turkey.

135.   Because of eBay and Citibank, N.A. closing his accounts, Yayla suffered loss to his income of over $500,000, emotional distress in the form of depression due to being labeled a terrorist and being unable to continue his work fighting terrorism, credit loss, and reputational harm.

## 2.  Allegations Specific to Atak

136.   Between December 29, 2021, and January 20, 2023, Atak was listed on the World-Check database as a "non-conviction terror" and was tagged within the Special Interest categories "Terror Related; Frozen and Seized Assets."

FIRST AMENDED CLASS ACTION COMPLAINT

137.    On January 20, 2023, Defendants changed Atak's record to state he is the "Individual" Category and changed his Special Interest Categories to "Frozen and Seized Assets; Absconder or Fugitive; Explicit Sanctions."

138.    On March 17, 2022, eBay, Inc. closed Atak's accounts.  On information and belief, eBay's closure of Atak's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey.

139.    After the closing of his eBay, Inc. account, Atak attempted to sell through Shopify Inc., but no credit card company was willing to work with him.  On information and belief, the refusal of credit card companies to work with Atak was because of the information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and the closure of his e-Bay account.

140.    In August 2022, Wells Fargo & Company closed Atak's personal and business checking accounts.  On information and belief, closure of Atak's Wells Fargo account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, the closure of his e-Bay account, and other World-Check related information or activities.

141.    On September 13, 2023, Amazon.com, Inc. emailed Atak to inform him that his seller account was deactivated because "Amazon must comply with government sanctions and export control regulations."  On information and belief, Amazon's deactivation of Atak's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

142.    MasterCard, Inc., through GoDaddy Inc., also refused to work with Atak.  On information and belief, MasterCard's refusal to work with Atak because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

-4-

FIRST AMENDED CLASS ACTION COMPLAINT

143.   As a result of eBay, Inc., Wells Fargo & Company, and Amazon.com, Inc. closing his accounts, and MasterCard, Inc., and other credit card companies refusing to do business with him, Atak suffered loss to his income of approximately $550,000, inability to sell about $200,000 worth of inventory, loss of business opportunity with an investor, emotional distress due to the loss of his career, credit loss, and reputational damages.

### 3.  Allegations Specific to Kalyoncu

144.   As of January 11, 2023, Kalyoncu was listed on World-Check as "non-conviction terror" and "individual" and was tagged within the Special Interest categories "Terror Related; Frozen and Seized Assets; Absconder or Fugitive; Explicit Sanctions."

145.   By March 8, 2023, World-Check updated Kalyoncu's record, listing him as an "individual" and tagging him within the Special Interest categories "Frozen and Seized Assets; Absconder or Fugitive; Explicit Sanctions."

146.   Because of World-Check's false and misleading statements, Kalyoncu suffered reputational harm.

### 4.  Allegations Specific to Mercan

147.   As of December 29, 2021, Mercan was categorized on World-Check as "non-conviction terror" and was tagged with the Special Interest categories "Terror Related; Frozen and Seized Assets."

148.   On April 6, 2022, Mercan contacted Defendants, requesting they remove his record from World-Check.

149.   On May 3, 2022, Defendants rejected Mercan's request and instead updated his record, categorizing him as an "individual" and tagging him within the Special Interest categories "Explicit Sanctions; Frozen and Seized Assets."

150.   In January 2023, Defendants again updated Mercan's record – claiming the update was due to a Turkish government source reporting he was included on the Green list of wanted terrorists released by the Turkish Ministry of the Interior –

FIRST AMENDED CLASS ACTION COMPLAINT

Mercan's Special Interest categories were changed to "Explicit Sanctions; Absconder or Fugitive; Frozen and Seized Assets."

151.    Mercan again requested that Defendants remove his record from World-Check on March 6, 2023, and March 17, 2023 to no avail.

152.    Mercan explained to Defendants that he is a political target of the Turkish government, he has never been involved in any activity of a terrorist organization, and that the other nations do not consider the GM to be a terrorist organization.

153.    On February 23, 2023 JPMorgan Chase & Co. sent Mercan a letter informing him that it was closing his accounts following a "periodic[] review of [its] customer relationships" because of his "connection to a publicly reported financial investigation."    On information and belief, JPMorgan Chase & Co.'s closure of Mercan's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

154.    After JPMorgan Chase & Co. closed Mercan's account and cancelled his credit card, Mercan attempted to open an account with local banks, including California Bank & Trust, which initially opened an account for him, but closed it one week later because it considered Mercan a high-risk customer.    On information and belief, California Bank & Trust's closure of Mercan's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

155.    On September 19, 2023, Amazon.com, Inc. closed Mercan's buyer and seller accounts.    On information and belief, Amazon's closure of Mercan's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

-6-

156.    As a result of the closing of his accounts by Amazon.com, Inc., JPMorgan Chase & Co., and California Bank & Trust, Mercan suffered loss to his income of approximately $500,000, emotional distress in the form of sleeplessness and stress due to losing his business, income loss, and reputational harm to himself and his brand.

157.    All Mercan's account closures were of accounts he had while he was residing in California, and with California-based branch accounts of JPMorgan Chase and California Bank & Trust, and with whatever entity within Amazon that deals with California accounts.

### 5.  **Allegations Specific to Cinar**

158.    As of December 29, 2021, Cinar was listed on World-Check as "non-conviction terror" and was tagged within the Special Interest categories "Terror Related; Frozen and Seized Assets."

159.    By May 12, 2022, World-Check updated Cinar's record, listing him as an "individual" and tagging him within the Special Interest categories "Explicit Sanctions; Frozen and Seized Assets."

160.    On September 21, 2022, Rupert Cowper-Coles of Reynolds Porter Chamerlain LLP, representing Refinitiv Limited, stated that Refinitiv Limited did not believe there were grounds to remove Cinar's record from World-Check or that amendments to Cinar's record were necessary, but modified certain language in the "Additional Comments" section of Cinar's World-Check record.

161.    One May 23, 2022, Bank of America closed Cinar's business and personal checking/savings account.  On information and belief, Bank of America's closure of Cinar's account was because of the false and misleading information contained in World-Check regarding his alleged terrorist related conduct in Turkey, and other World-Check related information or activities.

162.    Because of World-Check's false and misleading statements, Cinar suffered emotional distress and reputational harm, impacting his relationships with

FIRST AMENDED CLASS ACTION COMPLAINT

investors, business partners, and strategic allies in the banking industry.

## V.    Jurisdiction and Venue

### A. Jurisdiction Generally

163.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), because Plaintiffs' claims arise under the RICO statute, 18 U.S.C. § 1961, *et seq*. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

164.    This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332, as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than each Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

165.    This Court has specific personal jurisdiction over each Defendant because each is engaged in commercial activity purposefully directed at California, including that: the activities of each Defendant relate to and further the use of World-Check by companies doing business in California and are intended to and do impact California based persons or companies; the harm experienced by one or more Plaintiffs or class members occurred in California; the exercise of jurisdiction is authorized by California's long arm statute; and the exercise of jurisdiction comports with due process requirements. Plaintiffs' claims arise out of or relate to, *inter alia*, each Defendant's contacts with California.

### 1. Jurisdiction Over Defendant Refinitiv Limited

166.    This Court has personal jurisdiction over Defendant Refinitiv Limited pursuant to Fed. R. Civ. P. 4(k)(2) because (a) Plaintiffs' claims arise under the federal RICO statute; (b) this Defendant is a foreign company, incorporated and headquartered in the United Kingdom, and therefore not subject to jurisdiction in any state court of general jurisdiction; and (c) jurisdiction is consistent with the United States Constitution and laws because Defendant purposefully directed its activities at

-8-

the United States, Plaintiffs' claims arise out of these contacts with the United States, and the exercise of jurisdiction is reasonable.

167.    Defendant Refinitiv Limited purposefully directed its activities at the United States by exercising operational and editorial control over the content in World-Check and maintaining it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be included in World-Check, and exercising control and authority regarding the inclusion or exclusion of any content in World-Check, including information and records containing false and misleading information for World-Check regarding United States residents, including the Plaintiffs and members of the Classes, access to which is then marketed and sold by another Refinitiv-related entity to over 1,000 subscribers within the United States, including all the World-Check subscribers who took adverse actions against Plaintiffs, on information and belief, eBay, Inc., Citibank, N.A., Wells Fargo & Company, Amazon.com, Inc., MasterCard, Inc., JPMorgan Chase & Co., California Bank & Trust, and Bank of America.

168.    The foregoing activities of Refinitiv Limited are accomplished through a highly interactive website on which these United States subscribers not only purchase World-Check, but access the database, run queries on the records in the database, and otherwise make use of the database's screening capabilities.

169.    Defendant Refinitiv Limited purposefully directed its World-Check website at the United States as evidenced by, for instance, the inclusion in its World-Check privacy statement a notice that exclusively applies to California residents, and providing a Refinitiv Risk Master Terms Agreement under U.S. law; Refinitiv Limited entered into agreements with persons or entities doing business in California, with the knowledge, intention, and understanding that World-Check would be utilized by its customers doing business in California and would impact the financial, business, property, or other pursuits of persons or entities doing business in California.

-9-

FIRST AMENDED CLASS ACTION COMPLAINT

170.   The harms resulting from the sale of access to the World-Check false and misleading information were foreseeably suffered in the United States in general and California specifically where both the subscribers and the subjects of the false and misleading records are located, and because Defendant Refinitiv Limited, *inter alia*, exercises operational and editorial control over the content in World-Check and maintaining it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be included in World-Check, and exercises control and authority regarding the inclusion or exclusion of any content in World-Check, including information on the residency and whereabouts of the subjects of its World-Check records.

171.   Plaintiffs' claims arise from or relate to Defendant Refinitiv Limited's contacts with the United States, including specifically California, because Plaintiffs were harmed by the false and misleading information contained on World-Check, the reliance on which caused World-Check subscribers in the United States to close accounts or otherwise refuse to do business.

172.   This Court has specific personal jurisdiction over Defendant Refinitiv Limited pursuant to California's long-arm statute, Cal. CCP § 410.10, because (a) Refinitiv Limited purposefully directed its activities at the forum, (b) Plaintiffs claims arise from or relate to Refinitiv Limited's forum-related activities, and (c) jurisdiction comports with fair play and substantial justice.

173.   Defendant Refinitiv Limited purposefully directed its activities at California by exercising operational and editorial control over the content in World-Check and maintaining it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be included in World-Check, and exercising control and authority regarding the inclusion or exclusion of any content in the World-Check records, which contains false and misleading information regarding California residents, including Kalyoncu and Mercan and members of the California Damages Class and California Injunctive Relief Class. Access to the false

-10-

and misleading information has been sold to over 160 subscribers within California, including certain World-Check subscribers who took adverse actions against Plaintiffs (on information and belief, eBay, Inc., Wells Fargo & Company, and California Bank & Trust).

174.   The foregoing activities of Refinitiv Limited are accomplished through a highly interactive website on which these California subscribers not only purchase World-Check, but access the database, run queries on the records in the database, and otherwise make use of the database's screening capabilities.

175.   Defendant Refinitiv Limited expressly aimed and directed its conduct at California by, in its regular course of business, exercising operational and editorial control over the content in World-Check and maintaining it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be included in World-Check, a product that is accessed and sold via a highly interactive website to California residents and delivered to the forum.

176.   Defendant Refinitiv Limited purposefully directed its World-Check website at California as evidenced by, for instance, the inclusion in its World-Check privacy statement of a notice that exclusively applies to California residents.

177.   The harms resulting from the sale of the World-Check product were foreseeably suffered in California because that is where both multiple subscribers and the subjects of the false and misleading information at issue are located, and because Defendant Refinitiv Limited, *inter alia*, exercises operational and editorial control over the content in World-Check and maintains it on a day-to-day basis, including establishing the inclusion criteria that determine what content can or cannot be included in World-Check, and exercises control and authority regarding the inclusion or exclusion of any content in World-Check, including information on the residency and whereabouts of the subjects of its World-Check records.

178.   Plaintiffs' claims arise out of or relate to Defendant Refinitiv Limited's contacts with California because Plaintiffs, two of whom reside in California, and

-11-

FIRST AMENDED CLASS ACTION COMPLAINT

members of the Classes, including the California Damages Class and California Injunctive Relief Class, were harmed by the false and misleading information contained in their own records, the reliance on which caused World-Check subscribers in California to close accounts or otherwise refuse to do business.

## 2. Jurisdiction Over Defendant Global World-Check Holdings (Nominee) Ltd.

179.  This Court has personal jurisdiction over Defendant Global World-Check Holdings (Nominee) Ltd. pursuant to Fed. R. Civ. P. 4(k)(2) because (a) Plaintiffs' claims arise under the federal RICO statute; (b) this Defendant is a foreign company, incorporated and headquartered in the United Kingdom, and therefore not subject to jurisdiction in any state court of general jurisdiction; and (c) jurisdiction is consistent with the United States Constitution and laws because Defendant purposefully directed its activities at the United States, Plaintiffs' claims arise out of or relate to these contacts with the United States, and the exercise of jurisdiction is reasonable.

180.  Defendant Global World-Check Holdings (Nominee) Ltd. purposefully directed its activities at the United States by managing business operations and research for World-Check and the data governance, quality assurance, and third-party data providers for the World-Check database which contains false and misleading information regarding United States residents, including Plaintiffs and members of the Classes, and which was sold to over 1,350 subscribers within the United States.

181.  Those subscribers include the World-Check subscribers who took adverse actions against Plaintiffs (on information and belief, eBay, Inc., Citibank, N.A., Wells Fargo & Company, Amazon.com, Inc., MasterCard, Inc., JPMorgan Chase & Co., California Bank & Trust, and Bank of America).

182.  The foregoing activities of Global World-Check Holdings (Nominee) Ltd. are accomplished through a highly interactive website on which these United States subscribers not only purchase World-Check, but access the database, run

-12-

FIRST AMENDED CLASS ACTION COMPLAINT

queries on the records in the database, and otherwise make use of the database's screening capabilities.

183.  The harms resulting from the sale of the World-Check product were foreseeably suffered in the United States in general and California specifically because that is where both subscribers and the subjects of the false and misleading information are located and because Defendant Global World-Check Holdings (Nominee) Ltd. manages business operations and research for World-Check, including data governance, data quality assurance, and management of third-party data providers, including information on the residency and whereabouts of the subjects of its World-Check.

184.  Plaintiffs' claims arise from or relate to Defendant Global World-Check Holdings (Nominee) Ltd.'s contacts with the United States, including specifically California, because Plaintiffs were harmed by the false and misleading information contained on the World-Check database, the reliance on which caused World-Check subscribers in the United States to close accounts or otherwise refuse to do business.

185.  This Court has specific personal jurisdiction over Defendant Global World-Check Holdings (Nominee) Ltd. pursuant to California's long-arm statute, Cal. CCP § 410.10, because (a) Global World-Check Holdings (Nominee) Ltd. purposefully directed their activities at the forum, (b) Global World-Check Holdings (Nominee) Ltd.'s forum-related activities arise from or relate to Plaintiffs' claims, and (c) jurisdiction comports with fair play and substantial justice.

186.  Defendant Global World-Check Holdings (Nominee) Ltd. purposefully directed its activities at California by managing business operations and research for World-Check, including the data governance, quality assurance, and third-party data providers for World–Check, which contains false and misleading information regarding California residents, including Kalyoncu and Mercan and members of the California Damages Class and California Injunctive Relief Class, and which was sold to over 160 subscribers within California, including several World-Check subscribers

-13-

who took adverse actions against Plaintiffs (on information and belief, eBay, Inc., Wells Fargo & Company, and California Bank & Trust).

187.  The foregoing was achieved through a highly interactive website on which these California subscribers not only purchase World-Check, but access the database, run queries on the records in the database, and otherwise make use of the database's screening capabilities.

188.  The harms resulting from the sale of access to these World-Check records were foreseeably suffered in California because that is where both the subscribers and the subjects of the false and misleading information are located and because Defendant Global World-Check Holdings (Nominee) Ltd., *inter alia*, manages business operations and research for World-Check, including the data governance, quality assurance, and third-party data providers, including information on the residency and whereabouts of the subjects of its World-Check records.

189.  The claims arise out of or relate to Defendant Global World-Check Holdings (Nominee) Ltd.'s contacts with California because two of the Plaintiffs who reside in California, and the members of the Classes, including the California Damages Class and California Injunctive Relief Class, were harmed by the false and misleading information contained on the World Check database, the reliance on which caused World-Check subscribers in California to close accounts or otherwise refuse to do business.

190.  Defendant Global World-Check Holdings (Nominee) Ltd. has formed a single enterprise with Defendant Refinitiv Limited and thus Refinitiv Limited's contacts with the United States and California can be attributed to Global World-Check Holdings (Nominee) Ltd., and vice versa, for purposes of personal jurisdiction under Fed. R. Civ. P. 4(k)(2) and Cal. CCP § 410.10.

191.  There is a unity of interest between Defendant Global World-Check Holdings (Nominee) Ltd. and Defendant Refinitiv Limited.  Both entities share the same parent, LSEG, which is the beneficial owner of 100% of the issued share capital

-14-

of both Global World-Check Holdings (Nominee) Ltd. and Refinitiv Limited.

192.   Prior to the rebranding from "Refinitiv" to "LSEG" in or around November 2023, Defendants' website did not distinguish among Global World-Check Holdings (Nominee) Ltd., Refinitiv Limited, or any other subsidiaries, and referred only to "Refinitiv", including on the webpage specific to World-Check.

193.   Since its rebranding, Defendants' website continues to fail to distinguish among the LSEG entities and only refers to LSEG.

194.   In 2022, the only two directors of Global World-Check Holdings (Nominee) Ltd., Timothy Knowland and Peter Thorn, were also on the board of Refinitiv Limited and are both employees of Defendant LSEG.  Global World-Check Holdings (Nominee) Ltd. has no customers of its own outside of Refinitiv Limited and Defendant LSEG and its other subsidiaries.

195.   Failure to disregard the separate identities of Defendants Global World-Check Holdings (Nominee) Ltd. and Refinitiv Limited would result in fraud or injustice because both Global World-Check Holdings (Nominee) Ltd. and Refinitiv Limited are involved in perpetrating the harms suffered by Plaintiffs.

### 3.  Jurisdiction Over Defendant Refinitiv US LLC

196.   Refinitiv US LLC is registered to transact business in California.  As part of its registration, Refinitiv US LLC has assigned an agent for service of process in California who, among other things, consents to the service of process.

197.   Defendant Refinitiv US LLC formed a single enterprise with Defendant Refinitiv Limited – and through Refinitiv Limited, Defendant Global World-Check Holdings (Nominee) Ltd. – and thus Refinitiv Limited's and Global World-Check Holdings (Nominee) Ltd.'s contacts with California can be attributed to Refinitiv US LLC, and vice versa, for purposes of personal jurisdiction under the California long-arm statute, Cal. CCP § 410.10.

198.   There is a unity of interest between Refinitiv US LLC and Refinitiv Limited because they share the same parent, LSEG, which is the beneficial owner of

FIRST AMENDED CLASS ACTION COMPLAINT

100% of the issued share capital of both Refinitiv US LLC and Refinitiv Limited; Refinitiv US LLC is the U.S. operating company of Refinitiv; before the rebranding from "Refinitiv" to "LSEG", Defendants' website failed to distinguish between Refinitiv US LLC, Refinitiv Limited, and any other subsidiaries, and instead only referred to "Refinitiv", including on the webpage specific to World-Check; and on information and belief, Refinitiv US LLC and Refinitiv Limited do not have separate employees from LSEG.

199.   Failure to disregard the separate identities of Defendants Refinitiv US LLC and Refinitiv Limited would result in fraud or injustice because both Refinitiv US LLC and Refinitiv Limited are involved in perpetrating the harms suffered by Plaintiffs, and, on information and belief, both Refinitiv US LLC and Refinitiv Limited share in the profits and benefits derived from the subscriptions of World-Check.

200.   In addition to Defendant Refinitiv Limited's and Defendant Global World-Check Holdings (Nominee) Ltd.'s contacts with California, described above in ¶¶ 172-178 and 185-189, Refinitiv US LLC regularly targets sales of World-Check at California by employing ten sales and customer relations personnel in California; Refinitiv US LLC spent £27,600 for paid search advertising directed at California in the last three fiscal years, generating 71,017 impressions, 42 clicks, and 164 view-through conversions; Refinitiv US LLC does not just place World-Check in the stream of commerce, but actively conducted transactions with California customers and offered subscribers access to customer relations personnel; on information and belief, those sales and customer relations personnel are located at three offices in California; Refinitiv US LLC has 168 World-Check customers in California; Refinitiv US LLC derives significant revenues from California (£9,322,689 in 2022, £8,199,427 for 2021, £6,749,540 for 2020, and £4,512,461.19 for 2019); and Refinitiv US LLC pays taxes in California.

201.   Defendant Refinitiv US LLC aims and directs its conduct at California

FIRST AMENDED CLASS ACTION COMPLAINT

because it markets and sells the World-Check product to California residents via an interactive website in its regular course of business and delivers the World-Check product into the forum.

202.   Plaintiffs' claims arise out of or relate to Defendant Refinitiv US LLC's contacts with California because Plaintiffs, two of whom reside in California, and members of the Classes, including the California Damages Class and California Injunctive Relief Class, were harmed by the false and misleading information contained on the World-Check database, the reliance on which caused World-Check subscribers in California to close or otherwise refuse to do business.

203.   The harms resulting from the sale of the World-Check product were foreseeably suffered in California because that is where both subscribers and the subjects of the false and misleading records at issue are located, because Defendant Refinitiv US LLC is involved in the sales and marketing of subscriptions to World-Check in California, and because, on information and belief, Refinitiv UC LLS has information on the residency and whereabouts of the subjects of its World-Check records.

### 4. Jurisdiction Over Defendant Refinitiv US Organization LLC

204.   Refinitiv US Organization LLC is registered to transact business in California. As part of its registration, Refinitiv US Organization LLC has assigned an agent for the service of process in California who, among other things, consents to the service of process.

205.   Defendant Refinitiv US Organization LLC is an alter ego of Defendant Refinitiv US LLC – and through it, Defendants Refinitiv Limited and Global World-Check Holdings (Nominee) Ltd. – and thus Refinitiv US LLC's, Refinitiv Limited's, and Global World-Check Holdings (Nominee) Ltd.'s contacts with California can be attributed to Refinitiv US Organization LLC, and vice versa, for purposes of personal jurisdiction under the California long-arm statute, Cal. CCP § 410.10.

206.   There is a unity of interest and ownership between Defendants Refinitiv

-17-

US Organization LLC and Refinitiv US LLC because they share a parent, LSEG and, on information and belief, Refinitiv US Organization LLC is a wholly owned subsidiary of Refinitiv US LLC; Refinitiv US Organization LLC is disregarded for United States tax purposes to be a separate entity from its owners, Refinitiv US LLC; Refinitiv US Organization LLC and Refinitiv US LLC are part of a network of affiliated companies engaged in the business of operating and managing information that provides customers with competitive information on the financial and risk markets, including, on information and belief, through World-Check; and Refinitiv US Organization LLC is an intellectual property holding company, which holds a sub-license authorizing the sale and distribution of World-Check in the United States and Refinitiv US Organization LLC entered into a distribution agreement with Refinitiv US LLC to market and sell World-Check to customers in the financial and risk markets.

207.   Failure to disregard the separate identities of Defendants Refinitiv US Organization LLC and Refinitiv US LLC would result in fraud or injustice because both Defendants are involved in perpetrating the harms suffered by Plaintiffs, and both Defendants share in the profits and benefits derived from the subscriptions of World-Check.

208.   The claims arise out of or relate to Defendant Refinitiv US Organization LLC's contacts with California because Plaintiffs, two of whom reside in California, and members of the Classes, including the California Damages Class and California Injunctive Relief Class, were harmed by the false and misleading information contained in the World–Check database, the reliance on which caused World-Check subscribers in California to close accounts or otherwise refuse to do business.

209.   The harms resulting from the sale of access to the World-Check product were foreseeably suffered in California because that is where both subscribers and the subjects of the World-Check false and misleading information at issue are located, because Defendant Refinitiv US Organization LLC is an intellectual

-18-

property holding company, and holds a sub-license from Financial & Risk Organisation Limited authorizing the sale and distribution of World-Check in the United States, , including California, and because, on information and belief, Refinitiv US Organization LLC has information on the residency and whereabouts of the subjects of its World-Check records.

### 5. <u>Jurisdiction Over Defendant LSEG</u>

210.   This Court has personal jurisdiction over Defendant LSEG pursuant to Fed. R. Civ. P. 4(k)(2) because (a) Plaintiffs' claims arise under the federal RICO statute; (b) this Defendant is a foreign company, incorporated and headquartered in the United Kingdom, and therefore not subject to jurisdiction in any state court of general jurisdiction; and (c) jurisdiction is consistent with the United States Constitution and laws because Defendant purposefully directed its activities at the United States, Plaintiffs' claims arise out of or relate to these contacts with the United States, and the exercise of jurisdiction is reasonable.

211.   Defendant LSEG purposefully directed its activities at the United States by having 16 offices in the United States, including an office in New York with over 1,000 employees representing all LSEG's divisions (which would include World-Check operations); by including in its World-Check privacy statement a notice that exclusively applies to California residents and by providing a California consumer privacy notice on its website; and by entering into agreements, directly or indirectly, with persons or entities doing business in California, with the knowledge, intention, and understanding that the World-Check product would be utilized by its customers doing business in California and would impact the financial, business, property, or other pursuits of persons or entities doing business in California.

212.   Plaintiffs' claims arise from Defendant LSEG's contacts with the United States because LSEG owns and, on information and belief, oversees and directs the operation, publishing, distribution, sales, marketing, and advertising of World-Check.

FIRST AMENDED CLASS ACTION COMPLAINT

213.   Defendant LSEG is an alter ego of Defendants Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC – and through Refinitiv US LLC, Refinitiv US Organization LLC – and thus Refinitiv Limited's, Global World-Check Holdings (Nominee) Ltd.'s, Refinitiv US LLC's, and Refinitiv US Organization LLC's contacts with the United States can be attributed to LSEG, and vice versa, for purposes of personal jurisdiction under Fed. R. Civ. P. 4(k)(2).

214.   There is unity of interest and ownership between Defendants LSEG, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC because 100% of the issued share capital of Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC is beneficially owned by LSEG; and because, the brand "Refinitiv" has been discontinued and replaced by "LSEG".

215.   On information and belief, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC have no employees that are not employed by LSEG, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., Refinitiv US LLC, and LSEG share offices; and LSEG owns and, on information and belief, oversees and/or directs the operation, publishing, distribution, marketing, and advertising of World-Check.

216.   On information and belief, Refinitiv Limited's, Global World-Check Holdings (Nominee) Ltd.'s, and Refinitiv US LLC's directors are employees of LSEG.   Refinitiv Limited's board has delegated the day-to-day running of its business to LSEG.

217.   Failure to disregard the separate identities of Defendants LSEG, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC would result in fraud or injustice because each Defendant is involved in perpetrating the harms suffered by Plaintiffs, and each Defendant shares in the profits and benefits derived from the subscriptions of World-Check.

218.   This Court has specific personal jurisdiction over Defendant LSEG

-20-

FIRST AMENDED CLASS ACTION COMPLAINT

pursuant to California's long-arm statute, Cal. CCP § 410.10, because (a) LSEG purposefully directed its activities at the forum, (b) LSEG's forum-related activities arise from or relate to Plaintiffs' claims, and (c) jurisdiction comports with fair play and substantial justice.

219.  Defendant LSEG purposefully directed its activities at California by, for example, including in its World-Check privacy statement a notice that exclusively applies to California residents and by providing a California consumer privacy notice on its website; LSEG has three offices in California; and LSEG entered into agreements, directly or indirectly, with persons or entities doing business in California, with the knowledge, intention and understanding that the World-Check product would be utilized by its customers in California and would impact the financial, business, property or other pursuits of persons or entities doing business in California.

220.  Plaintiffs' claims arise from or relate to Defendant LSEG's contacts with California because LSEG owns and, on information and belief, oversees and directs the operation, publishing, distribution, sales, marketing, and advertising of World-Check.

221.  Defendant LSEG is an alter ego of Defendant Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and Refinitiv US LLC – and through Refinitiv US LLC, Refinitiv US Organization LLC – as described in ¶¶ 213-217, and thus Refinitiv Limited's, Global World-Check Holdings (Nominee) Ltd.'s, Refinitiv US LLC's, and Refinitiv US Organization LLC's contacts with California can be attributed to LSEG, and vice versa, for purposes of personal jurisdiction under the California long-arm statute, Cal. CCP § 410.10.

222. Defendants Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., Refinitiv US LLC, and Refinitiv US Organization LLC are agents of Defendant LSEG and thus Refinitiv Limited's, Global World-Check Holdings (Nominee) Ltd.'s, Refinitiv US LLC's, and Refinitiv US Organization LLC's

-21-

FIRST AMENDED CLASS ACTION COMPLAINT

contacts with the United States and California can be attributed to LSEG, and vice versa, for purposes of personal jurisdiction under Fed. R. Civ. P. 4(k)(2) and the California long-arm statute, Cal. CCP § 410.10.

223.    Defendant LSEG, as the parent, has a right to substantially control the activities of its subsidiaries, including Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., Refinitiv US LLC, and Refinitiv US Organization LLC.

224.    On information and belief, Defendant LSEG has manifested assent that the Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., Refinitiv US LLC, and Refinitiv US Organization LLC shall act on LSEG's behalf, and under LSEG's direction, to operate, publish, distribute, sell, market, and advertise World-Check.

## B. Venue

225.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the event giving rise to the claim occurred in the District. In addition, Kalyoncu and Mercan reside in this District.

## VI.    CLASS ACTION ALLEGATIONS

226.    Plaintiffs bring this class action on behalf of themselves, and all others similarly situated, under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following Nationwide Classes:

a. The Nationwide Damages Class: "All persons in the United States who, according to World-Check, are designated "non-conviction terror", "Absconder or Fugitive; Explicit Sanctions", "Terror Related; Frozen and Seized Assets", or words to that affect, according to World-Check, from May 12, 2019 until final judgment or settlement of the Nationwide Damages Class or such other time determined by the Court."

b. The Nationwide Injunctive Relief Class: "All persons in the United States who, according to World-Check, are associated with FETO and/or terrorism, or who in the future may be identified as associating with FETO and/or terrorism or words to that affect."

-22-

FIRST AMENDED CLASS ACTION COMPLAINT

227.    Plaintiffs also bring this class action on behalf of themselves, and all others similarly situated, under Rule 23(b)(1)(B), (b)(2), and/or, (b)(3) on behalf of the following state classes under the applicable jurisdictions' consumer protection or other applicable laws (the "State Damages Classes"):

    a.    The California Damages Class: "All persons residing in the state of California designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022, until final judgment or settlement of the California Damages Class or such other time determined by the Court."

    b.    The Illinois Damages: "All persons residing in the state of Illinois associated with designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from January 13, 2023, until final judgment or settlement of the Illinois Damages Class or such other time determined by the Court."

    c.    The Maryland Damages Class: "All persons residing in the state of Maryland designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022, until final judgment or settlement of the Maryland Damages Class or such other time determined by the Court or such other time determined by the Court."

    d.    The New Jersey Damages Class: "All persons residing in the state of New Jersey designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022 until final judgment or settlement of the New Jersey Damages Class or such other time determined by the Court."

    e.    The New York Damages Class: "All persons residing in the state of New York designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022, until final judgment or settlement of the New York Damages Class or such other time determined by the Court."

    f.    The Pennsylvania Damages Class: "All persons residing in the state of Pennsylvania designated 'non-conviction terror', 'Absconder or Fugitive; Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022, until final judgment or settlement of the Pennsylvania Damages Class or such other time determined by the Court."

    g.    The Virginia Damages Class: "All persons residing in the state of Virginia designated 'non-conviction terror' 'Absconder or Fugitive;

-23-

FIRST AMENDED CLASS ACTION COMPLAINT

Explicit Sanctions', 'Terror Related; Frozen and Seized Assets', or words to that affect, according to World-Check from May 12, 2022 until final judgment or settlement of the Virginia Damages Class or such other time determined by the Court."

228.    Additionally, Plaintiffs bring this class action on behalf of themselves, and all others similarly situated, for injunctive relief under Rule 23(b)(2) on behalf of the parallel state injunctive relief classes under the applicable jurisdictions' consumer protection or other applicable laws (the "State Injunctive Relief Classes").

a. The California Injunctive Relief Class: "All persons residing in the state of California who, according to World-Check, are or have been associated with FETÖ and/or terrorism, or words to that affect, until the entry of judgment in this case or such other time determined by the Court."

b. The Illinois Injunctive Relief Class: "All persons residing in the state of Illinois who are or have been associated with FETÖ and/or terrorism, or words to that affect, according to World-Check until the entry of judgment in this case or such other time determined by the Court."

c. The New York Injunctive Relief Class: "All persons residing in the state of New York who are or have been associated with FETÖ and/or terrorism, or words to that affect, according to World-Check until the entry of judgment in this case or such other time determined by the Court."

229.    Plaintiffs also bring a nationwide claim for defamation under Rules 23(b)(3), 23(b)(2) and 23(c)(4).

230.    On information and belief, proof of the following elements will establish the claim of defamation under the laws of all or most states (the precise elements of which can be determined at the class certification stage):

a.  a statement of fact;

b.  that is false;

c.  and defamatory;

-24-

FIRST AMENDED CLASS ACTION COMPLAINT

d.  of and concerning the plaintiff;

e.  that is published to a third party (other than the plaintiff and defendant);

f.  not absolutely or conditionally privileged;

g.  that causes actual injury (this requirement is sometimes obviated by the device known as presumed harm, which remains available in certain cases);

h.  that is the result of fault by the defendant;

i.  that causes reputational harm;

j.  that presumptively cause special (pecuniary) harm by virtue of the use by financial or commercial business of the use of World Check and taking adverse financial activities against class members as a result.

231.  Even if establishment of these element may not determine liability for each state's defamation claim, such determinations are apt to drive the resolution of central issues in the action, thereby making them appropriate for certification under Rule 23(c)(4).

232.  Plaintiffs and members of the classes described above in ¶¶ 226.a and 227.a-g have suffered injury to their businesses or property because of Defendants' wrongful and unlawful conduct, as alleged herein, as provided in 18 U.S.C §§ 1961 *et seq*., and state defamation laws, and have suffered reputational and non-economic injuries, including but not limited to emotional distress damages, because of Defendants' conduct.

233.  Plaintiffs and members of the classes described above in ¶¶ 226.b and 228.a-c have also suffered and, without intervention by this Court, will continue to suffer irreparable harm for which there is no adequate remedy at law in that their rights, as alleged herein, have been and will continue to be systematically violated.

234.  Excluded from the classes alleged in ¶¶ 226-228 (together, the

"Classes") are Defendants, any entity in which a Defendants has a controlling interest, and their officers, directors, legal representatives, successors, subsidiaries, and assigns. The Classes also exclude any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

235.  The Nationwide Damages Class and the State Damages Classes are so numerous that joinder of all members would be impractical because these classes have hundreds, or thousands, of members geographically dispersed throughout the United States.

236.  The Nationwide Injunctive Relief Class and the State Injunctive Relief Classes are so numerous that joinder is impractical because, on information and belief, they have hundreds of members, and at a minimum well in excess of 40 members.

237.  There are numerous questions of law and fact that are common to the claims of the members of the Classes, including:

(a)  the exact number of members of the Nationwide Damages Class and State Damages Classes is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery.  Plaintiffs believe that the number of members is in the thousands;

(b)  whether Defendants Refinitiv US LLC, Refinitiv US Organization LLC, Refinitiv Limited, Global World-Check Holdings (Nominee) Ltd., and LSEG are alter egos of one another;

(c)  whether Refinitiv US LLC, Refinitiv Limited, and Global World-Check Holdings (Nominee) Ltd. have formed a single enterprise;

(d)  whether Refinitiv US LLC, Refinitiv US Organization LLC, and Refinitiv Limited Global World-Check Holdings (Nominee) Ltd., are agents of Defendant LSEG;

(e)  whether Defendants engaged in conduct actionable under the

-26-
FIRST AMENDED CLASS ACTION COMPLAINT

RICO statute;

(f)     whether Defendants were and are each a "person," as that term is defined in 18 U.S.C. § 1961(3);

(g)     whether the Defendants and World-Check's United States subscribers constitute a RICO enterprise within the meaning of 18 U.S.C. § 1961(4);

(h)     whether, alternatively, the Defendants, World-Check's United States subscribers, and the Republic of Turkey constitute an association-in-fact within the meaning of 18 U.S.C. § 1961(4);

(i)     whether Defendants are each a "person" that conducted the affairs of the Enterprises (described below) through a "pattern of racketeering activity";

(j)     whether Defendants have engaged in a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5);

(k)     whether Defendants have engaged in "racketeering activity" including whether they engaged in activities encompassed by the provisions of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud);

(l)     whether Plaintiffs and each member of the Nationwide Damages Class were and are each a "person injured in his or her business or property by reason of a violation of" RICO within the meaning of 18 U.S.C. §1964(c);

(m)     whether Plaintiffs and each member of the Nationwide Damages Class have been injured in his or her business or property as a direct and proximate result of Defendants' illegal conduct in violation of 18 U.S.C. §1962(c);

(n)     whether Plaintiffs and each member of the Nationwide Damages Class were and are each a "person injured in his or her business or property by reason of a violation of" RICO within the meaning of 18 U.S.C. § 1964(c);

(o)     whether Plaintiffs and each member of the Nationwide Damages Class have been injured in his or her business or property as a direct and proximate result of Defendants' illegal conduct in violation of 18 U.S.C. § 1962(c);

-27-

FIRST AMENDED CLASS ACTION COMPLAINT

(p)   whether Defendants violated the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);

(q)   whether Defendants violated California common law and Cal. Civ. Code §§ 44, *et seq.*;

(r)   whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §§ 505/1, *et seq.*) and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS §§ 510/1, *et seq.*);

(s)   whether Defendants defamed the Illinois Damages Class under the state's common law;

(t)   whether Defendants defamed the Maryland Damages Class under the state's common law;

(u)   whether Defendants defamed the New Jersey Damages Class under the state's common law;

(v)   whether Defendants violated the New York General Business Law (N.Y. GBL § 349);

(w)   whether Defendants defamed the New York Damages Class under the state's common law;

(x)   whether Defendants defamed the Pennsylvania Damages Class under the state's common law and 42 Pa. C.S.A. §§ 8341, *et seq.*;

(y)   whether Defendants defamed the Virginia Damages Class under the state's common law;

(z)   whether Defendants acted falsely or misleadingly in claiming the World-Check is "delivering accurate and reliable information" and that its researchers rely on information from "reliable and reputable sources";

(aa)   whether Defendants' deceptive acts had the capacity or tendency to deceive, and in fact did deceive, a reasonable consumer; and

(bb)   whether members of the Classes were injured because of Defendants' deceptive acts or practices.

-28-

FIRST AMENDED CLASS ACTION COMPLAINT

238.   The predominance requirement of Rule 23(b)(3) is satisfied because, for each claim and class asserted, there are common liability issues apt to drive the resolution of the case, and thus satisfy the predominance requirement.

239.   Plaintiffs are typical of other members of their respective Classes because all were subject to the same unfair and deceptive representations and actions and face ongoing injuries due to the conduct of Defendants as the cause of Plaintiffs' ongoing harm is Defendants' misleading inclusion/tagging of Plaintiffs' names on World-Check.

240.   The State Damages Classes' claims arising under the state defamation laws do not make a class action unmanageable.

241.   The defamation claims under the laws of each state mirror every other state defamation claim. Any variance between is insignificant.

242.   Plaintiffs are adequate representatives of the Classes because their interests are not antagonistic to those of the proposed Classes and because they are committed to litigating the case.

243.   Plaintiffs are represented by counsel with extensive experience in class action and complex litigation.

244.   Members of the Classes are ascertainable as the name of each member appears in World-Check.

245.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.

246.   The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

FIRST AMENDED CLASS ACTION COMPLAINT

247.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

### COUNT I

#### (VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962(C)) ON BEHALF OF THE NATIONWIDE DAMAGES CLASS)

248.   Plaintiffs repeat and reallege ¶¶ 1-247 of this complaint as if fully set forth herein.

249.   This Count is brought by Plaintiffs on behalf of the Nationwide Damages Class.

250.   Plaintiffs and members of the Nationwide Damages Class are each a "person" within the meaning of 18 USC § 1961(3).

251.   Defendants are each a "person" within the meaning of 18 USC § 1961(3).

252.   Defendants and World-Check's United States subscribers constitute an associated-in-fact enterprise within the meaning of §§ 1961(4) and 1962(c) ("Enterprise 1"). The pattern of racketeering activity described herein was conducted through that Enterprise.

253.   Defendants, World-Check's United States subscribers, and Turkey (including, but not limited to, the Ministry of Treasury and Finance, Financial Crimes Investigation Board, Ministry of Interior, and the collective set of institutions (the executive, legislative, and judicial branches)), also constitute an associated-in-fact enterprise within the meaning of §§ 1961(4) and 1962(c) ("Enterprise 2"). The pattern of racketeering activity described herein was conducted through that enterprise.

254.   Each Enterprise affects interstate or foreign commerce because each Enterprise is involved in commercial activities across state and national boundaries,

FIRST AMENDED CLASS ACTION COMPLAINT

such as the marketing, promotion, advertisement, sale, and renewal of products throughout the United States and other countries (including Great Britain) around the world, and the receipt of monies from the sale of those products.

255.   Each Enterprise has sold and continues to sell World-Check across the United States and around the world, which included and still includes the false and fraudulent statements during which the pattern of racketeering activity alleged occurred.

256.   Each Enterprise had the common purpose of promulgating, disseminating, and receiving the false and fraudulent information provided by the Turkish government to Defendants; each had an ongoing organizational structure in that false and fraudulent information regarding members of the Nationwide Damages Class was regularly and over many years promulgated, disseminated, and received on an ongoing basis.

257.   Defendants (and Turkey) engaged in acts of racketeering in violation of 18 U.S.C. § 1962(c), namely wire and mail fraud as proscribed by 18 U.S.C. § 1343. Refinitiv (and the unnamed Turkey) conspired to violate 18 U.S.C. § 1962(b) and 1962(c), in violation of 18 U.S.C. § 1962(d).

258.   Defendants (and Turkey) engaged in a scheme to defraud the public in general, by transmitting inaccurate and unreliable information on World-Check about Plaintiffs and members of the Nationwide Damages Class, obtained from Turkish government sources while simultaneously making misleading statements on Defendants' website that World-Check is "delivering accurate and reliable information" and that its researchers rely on information from "reliable and reputable sources."

259.   Defendants communicated by wire and/or mail as part of the scheme by reporting the Turkish government's inaccurate and unreliable information about Plaintiffs and members of the Nationwide Damages Class on its online World-Check database, while misleadingly communicating to visitors to its website about the

FIRST AMENDED CLASS ACTION COMPLAINT

1   reliability and accuracy of World-Check's information.

2   260.   Defendants intended to deceive, and did deceive, its World-Check

3   subscribers, who relied on its false and misleading statements, communicated

4   through the wires and/or mail, about World-Check in deciding to depend on World-

5   Check's assertions about Plaintiffs and members of the Nationwide Damages Class

6   in making decisions about whether to conduct business with Plaintiffs and members

7   of the Nationwide Damages Class. Alternatively, Defendants acted with reckless

8   disregard for the truth in promulgating and disseminating false and fraudulent

9   information as alleged above.

10   261.   The public was deceived via each Enterprise about the terrorist status of

11   Plaintiffs and members of the Nationwide Damages Class, and World-Check's

12   subscribers used that information, which they knew or should have known was

13   unreliable and which was communicated through the wires and/or mail on World-

14   Check.

15   262.   The Enterprises intended to, and did, deprive Plaintiffs and members of

16   the Nationwide Damages Class of money or property via each Enterprise by inducing

17   Defendants' customers to close the accounts of, or otherwise not do business with,

18   Plaintiffs and members of the Nationwide Damages Class due to the use by World-

19   Check's subscribers of inaccurate and unreliable information about Plaintiffs and

20   members of the Nationwide Damages Class. Alternatively, Defendants acted with

21   reckless disregard for the truth in promulgating and disseminating false and

22   fraudulent information as alleged above.

23   263.   Defendants willfully or knowingly conducted or participated in, directly

24   or indirectly, the affairs of each Enterprise through a pattern of racketeering activity

25   as defined by U.S.C. § 1961(5), including predicate acts that were related to each

26   other and pose a threat of continued racketeering activity.

27   264.   Turkey has published at least two inaccurate and unreliable lists of

28   alleged terrorists affiliated with the GM, which were then promulgated, disseminated,

-32-

1    and received through the activities of each Enterprise.

2    265.  Defendants have used, directed the use of, or caused to be used wire

3    and/or mail communications to relay Turkey's lists and other information obtained

4    from Turkish government sources on World-Check and regularly updates the

5    database in furtherance of the Enterprises' scheme to defraud.

6    266.  The pattern of racketeering alleged herein is ongoing as Defendants

7    continue to report on World-Check inaccurate and unreliable information from

8    Turkish government sources.

9    267.  Plaintiffs and members of the Nationwide Damages Class were

10   substantially injured and damaged because of the Enterprises' pattern of racketeering

11   activity alleged herein in that said racketeering activity was a proximate cause in

12   closing the accounts of members of the Nationwide Damages Class.

13   268.  Each Enterprise is ongoing and is a continuing organization, with the

14   alternative association-in-fact enterprises consisting of legal entities, such as an

15   association, limited liability companies, managing agents, and individuals and other

16   entities associated for the common purpose of deriving revenues and profits from the

17   sale of World-Check.

18   269.  Each participant in each Enterprise has a systematic linkage because

19   there are shared risks, corporate ties, contractual relationships, financial ties, sharing

20   of sensitive business information, and continuing coordination of activities due to the

21   interconnected structure of the Defendants.

22   270.  Within the Enterprises, there were common communication networks

23   through which Defendants and their co-conspirators shared information on a regular

24   and sustained basis.

25   271.  Through the Enterprises, Defendants and their co-conspirators have

26   engaged in a pattern of racketeering activity, which involves a deceptive scheme to

27   increase revenues and profits for Defendants and their co-conspirators through

28   World-Check, while maintaining a façade of World-Check's accuracy.

-33-

FIRST AMENDED CLASS ACTION COMPLAINT

272.    Defendants have been able to commit the predicate offenses by virtue of their involvement in, or control over World-Check.

273.    Absent the Defendants' participation in and control of World-Check, the Defendants would have been unable to perpetrate the fraudulent scheme and the predicate acts.

274.    The Enterprises provided Defendants with the necessary mechanism for hatching and executing their scheme, including misrepresenting on its website and in other public statements the accuracy of World-Check.

275.    At all relevant times, each participant in the Enterprises was aware of the scheme, was a knowing and willing participant in the scheme, and reaped revenues and/or profits therefrom.

276.    Defendants have directed and controlled the ongoing organization necessary to implement their scheme through communications of which Plaintiffs cannot now know because such information lies in Defendants' control.

277.    The activities of the Enterprises are national in scope and have a substantial impact upon the U.S. economy and upon interstate commerce.

278.    Because of the foregoing, the Nationwide Damages Class has been damaged in an amount to be determined at trial.

279.    The Nationwide Injunctive Relief Class seeks injunctive relief pursuant to 18 U.S. Code § 1964(a) to prevent further damage, for which there is no adequate remedy at law.

## COUNT II

### (VIOLATION OF DEFAMATION LAWS ON BEHALF OF THE NATIONWIDE DAMAGES CLASS)

280.    Plaintiffs repeat and reallege ¶¶ 1-247 of this complaint as if fully set forth herein.

281.    This Count is brought by Plaintiffs against Defendants on behalf of the

-34-

FIRST AMENDED CLASS ACTION COMPLAINT

1    Nationwide Damages Class.

2        282.    Defendants have intentionally published on World-Check purportedly

3    factual records and information about the Plaintiffs and members of the Nationwide

4    Damages Class, falsely designating them as members of a terrorist organization.

5        283.    Defendants' publications are false because Plaintiffs and members of

6    the Nationwide Damages Class are not terrorists and have never engaged in terrorist

7    activities.

8        284.    Defendants publish these records about Plaintiffs and members of the

9    Nationwide Damages Class on World-Check, which are accessible and, on

10   information and belief, have been accessed, by subscribers to World-Check.

11       285.    The defamatory statements are not privileged.

12       286.    Defendants knew or disregarded clear evidence that their defamatory

13   statements were false because Plaintiffs have explained to Defendants that the

14   statements were false, see *supra* at ¶¶ 127, 131, and 152, and because neither the

15   United States, nor any other government outside of Turkey, recognizes alleged

16   members of the GM as terrorists.

17       287.    The libelous records are defamatory *per se*, or have the natural tendency

18   to injure, because Defendants represent on World-Check that Plaintiffs and members

19   of the Nationwide Damages Class are affiliated with a terrorist organization, which

20   is a statement that requires no explanatory matter.

21       288.    The libelous records published by Defendants on Plaintiffs and

22   members of the Nationwide Damages Class have exposed them to reputational and

23   economic harm by causing World-Check's subscribers to close their accounts or

24   otherwise refuse to do business with them, see ¶¶ 133-135, 138-143, 146, 153-156,

25   and 161-162, *supra*.

26       289.    Defendants' defamation has caused special damages in the form of

27   economic loss, emotional distress, and reputational harm; *see* ¶¶ 135, 143, 146, 156,

28   and 162, *supra*.

290.   On information and belief, Defendants regularly republish and modify the defamatory records on World-Check with new, but inadequate information, and directs the republications to each new subscriber.

291.   By reason of the foregoing, Plaintiffs and the members of the Nationwide Damages Class have been damaged in an amount to be determined at trial.

## COUNT III

### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200) ON BEHALF OF THE NATIONWIDE INJUNCTIVE RELIEF CLASS)

292.   Plaintiffs repeat and reallege ¶¶ 1-247 of this complaint as if fully set forth herein.

293.   This Count is brought on behalf of the Nationwide Injunctive Relief Class.

294.   Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

295.   Defendants' conduct as alleged herein occurred in California. Defendants, as owners, operators, publishers, researchers, monitors, distributors, sellers, marketers, and advertisers of World-Check, in whole or in part, compiled information on California residents Kalyoncu and Mercan, sold subscriptions providing access to that information and the information of other Plaintiffs and members of the Nationwide Injunctive Relief Class to California customers, including, upon information and belief, eBay, Inc., Wells Fargo & Company, and California Bank & Trust, who in turn relied on the false and misleading information to close the accounts of Plaintiffs and other members of the Nationwide Injunctive Relief Class.

296.   Defendants' conduct is unlawful in that it violates RICO, 18 U.S.C. § 1961, *et seq*., described *supra* in ¶¶ 248-279.

297.   Defendants' conduct alleged herein is unfair. Defendants' lseg.com

website describes and represents World-Check as "delivering accurate and reliable information" and that its researchers rely on information from "reliable and reputable sources" and the World-Check privacy statement includes the claim that they "have in place robust controls designed to ensure that information about you on World-Check is accurate, relevant and not excessive" and that World-Check "compl[ies] with detailed research and screening processes for sourcing World-Check information and we monitor compliance with these processes" and that World-Check "make[s] extensive efforts to prevent inaccurate, outdated, irrelevant or excessive personal information being processed on World-Check."

298. World-Check contains information about Plaintiffs and members of the Nationwide Injunctive Relief Class that is false and misleading, including describing them as "Absconder[s] or Fugitive[s]" and "Reported associate[s] (Other) of Fetullahci Teror Orgutu/Paralel Devlet Yapilanmasi (FETO/PDY)", an alleged terrorist organization.

299. The profiles containing this false and misleading information caused injury to World-Check's consumers, who relied on this information, as well causing substantial injury to Plaintiffs and members of the Nationwide Injunctive Relief Class, who lost their income and, in some cases, their businesses.

300. Defendants' engaged in fraudulent business practices because Defendants misrepresented on their lseg.com website that the World-Check database is "accurate and reliable" and the World-Check privacy statement explains that World-Check employs processes to ensure their information is accurate, when the truth is that World-Check contains falsities and misrepresentations about Plaintiffs and members of the Nationwide Injunctive Relief Class in World-Check that had the capacity or tendency to deceive, and on information and belief did deceive, reasonable consumers who depended on World-Check to make decisions about whether to conduct business with Plaintiffs and the Nationwide Injunctive Relief Class.

-37-

FIRST AMENDED CLASS ACTION COMPLAINT

301. On information and belief, based on the false and misleading information in World-Check, some of World-Check's subscribers closed or refused to open accounts of, or otherwise decided not to do business with, Plaintiffs and members of the Nationwide Injunctive Relief Class, as set forth in ¶¶ 133-135, 138-143, 146, 153-156, and 161-162.

302. Plaintiffs and members of the Nationwide Injunctive Relief Class were injured economically because, on information and belief, World-Check's subscribers would not have closed or refused to open their accounts or otherwise deprived them of conducting business if not for their reliance on World-Check's false and misleading statements, as explained in ¶¶ 135, 143, and 157.

303. Absent an injunction by the Court directing the Defendants to remove references to Plaintiffs and members of the Nationwide Injunctive Relief Class from World-Check as associates of FETÖ and other implications that they are terrorists, Plaintiffs and the Nationwide Injunctive Relief Class will continue to suffer harm at the hands of the Defendants because World-Check subscribers are unlikely to re-open closed accounts, and Plaintiffs and members of the Nationwide Injunctive Relief Class are likely to face future account closures and refusals by World-Check subscribers to do business with them.

304. Plaintiffs and members of the Nationwide Injunctive Relief Class plead equitable relief in the alternative to any legal claims and further plead they have no adequate remedy at law. Plaintiffs' claims under the RICO and defamation laws are not adequate to provide relief for Plaintiffs' UCL claim because harms to Plaintiffs and members of the Nationwide Injunctive Relief Class will continue without an injunction.

305. Because of the foregoing Plaintiffs and the Nationwide Injunctive Relief Class seek injunctive relief.

FIRST AMENDED CLASS ACTION COMPLAINT

1

## COUNT IV

2

3

(VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200) ON BEHALF OF THE
CALIFORNIA INJUNCTIVE RELIEF CLASS)

4

5    306.  Mercan and Kalyoncu repeat and reallege ¶¶ 1-247 and 292-305 of this

6    complaint as if fully set forth herein.

7    307.  This Claim is brought on behalf of the California Injunctive Relief

8    Class.

9    308.  Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

10    309.  Defendants' conduct as alleged herein occurred in California (as well as

11    other places).  Defendants, as owners, operators, publishers, researchers, monitors,

12    distributors, sellers, marketers, and advertisers of World-Check, compiled records on

13    California residents Kalyoncu and Mercan and members of the California Injunctive

14    Relief Class, sold subscriptions providing access to these records and the records of

15    other Plaintiffs and members of the California Injunctive Relief Class to California

16    subscribers, including, on information and belief, eBay, Inc., Wells Fargo &

17    Company, and California Bank & Trust, who in turn relied on the false and

18    misleading information in these records to close the accounts of Plaintiffs and other

19    members of the California Injunctive Relief Class.

20    310.  Defendants' conduct is unlawful in that it violates RICO, 18 U.S.C. §

21    1961, *et seq.*, described *supra* in ¶¶ 248-279.

22    311.  Defendants' conduct as alleged herein is unfair. Defendants' lseg.com

23    website describes and represents World-Check as "delivering accurate and reliable

24    information" and that its researchers rely on information from "reliable and reputable

25    sources," and the World-Check privacy statement includes the representation that

26    they "have in place robust controls designed to ensure that information about you on

27    World-Check is accurate, relevant and not excessive" and that World-Check

28

-39-

FIRST AMENDED CLASS ACTION COMPLAINT

"compl[ies] with detailed research and screening processes for sourcing World-Check information and we monitor compliance with these processes" and that World-Check "make[s] extensive efforts to prevent inaccurate, outdated, irrelevant or excessive personal information being processed on World-Check." However, World-Check contains information about Plaintiffs and members of the California Injunctive Relief Class that is false and misleading, including describing them as "Absconder[s] or Fugitive[s]" and "Reported associate[s] (Other) of Fetullahci Teror Orgutu/Paralel Devlet Yapilanmasi (FETO/PDY)", an alleged terrorist organization.

312.  The profiles containing this false and misleading information caused injury to World-Check's consumers, who relied on this information, as well causing substantial injury to Plaintiffs and members of the California Injunctive Relief Class, who lost their income and, in some cases, their businesses.

313.  Defendants engaged in fraudulent business practices because Defendants misrepresented and continue to misrepresent on their lseg.com website that World-Check is "accurate and reliable" and in the World-Check privacy statement that World-Check employs processes to ensure their information is accurate. The truth is that World-Check contains falsities and misrepresentations about Plaintiffs and members of the California Injunctive Relief Class in World-Check that had and continues to have the capability or tendency to deceive, and on information and belief did deceive, reasonable consumers who depended on World-Check to make decisions about whether to conduct business with Plaintiffs and members of the California Injunctive Relief Class.

314.  On information and belief, based on these misrepresentations, World-Check's subscribers closed or refused to open accounts of, or otherwise decided not to do business with members of the California Injunctive Relief Class, as explained in ¶¶ 153-157.

315.  Mercan, and members of the California Injunctive Relief Class were injured economically because, on information and belief, World-Check's subscribers

-40-

would not have closed their accounts or otherwise deprived them of business if not for their reliance on World-Check's false and misleading statements, as explained in ¶ 156.

316.    Absent an injunction by the Court directing the Defendants to remove references to Kalyoncu, Mercan,  and members of the California Injunctive Relief Class from World-Check as associates of FETÖ and other implications that they are terrorists, Plaintiffs and the California Injunctive Relief Class will continue to suffer harm at the hands of the Defendants because World-Check subscribers are unlikely to re-open closed accounts and Plaintiffs and members of the California Injunctive Relief Class are likely to face future account closures and refusals by World-Check customers to do business with them.

317.    Mercan's and Kalyoncu's claims under the RICO and defamation laws are not adequate to provide relief the claim asserted in this Count because harms to members of the California Injunctive Relief Class will continue without an injunction.

318.    With respect to this Claim, Mercan, Kalyoncu, and members of the California Injunctive Relief Class have no adequate remedy at law.

319.    By reason of the foregoing, the Plaintiffs Kalyoncu and Mercan and the California Injunctive Relief Class seek injunctive relief.

## <u>COUNT V</u>

### (DEFAMATION PURSUANT TO COMMON LAW AND CAL. CIV. CODE §§ 44, *ET SEQ.* ON BEHALF OF THE CALIFORNIA DAMAGES CLASS)

320.    Kalyoncu and Mercan repeat and reallege ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

321.    This Count is brought on behalf of the California Damages Class.

322.    Kalyoncu, Mercan, and members of the California Damages Class are private, not public, figures under First Amendment standards.

323.    Defendants have intentionally published on World-Check purportedly

FIRST AMENDED CLASS ACTION COMPLAINT

factual records and information about Kalyoncu, Mercan, and members of the California Damages Class, falsely designating them as members of a terrorist organization.

324.    Defendants' publications are false because Kalyoncu, Mercan, and members of the California Damages Class are not terrorists and have never engaged in terrorist activities.

325.    Defendants knew or disregarded clear evidence that their defamatory statements were false because Plaintiffs have explained to Defendants that the statements were false, *see supra* at ¶¶ 152, and because neither the United States, nor any other government outside of Turkey, recognizes alleged members of the GM as terrorists.

326.    The libelous records are defamatory *per se*, or have the natural tendency to injure, because Defendants represent on World-Check that Kalyoncu, Mercan, and members of the California Damages Class are affiliated with a terrorist organization, which is a statement that requires no explanatory matter.

327.    The libelous records published by Defendants on Kalyoncu, Mercan, and members of the California Damages Class have exposed them to hatred, contempt, ridicule, or obloquy, or which causes them to be shunned or avoided, or which has a tendency to injure them in their occupation, by causing World-Check's subscribers to refuse to do business with them, *see* ¶¶ 153-154, *supra*.

328.    Defendants' defamation has caused special damages in the form of economic loss, emotional distress, and reputational harm, *see* ¶¶ 146-156, *supra*.

329.    On information and belief, Defendants regularly republish the defamatory records on World-Check and directs the republications to each new subscriber.

330.    By reason of the foregoing, Kalyoncu, Mercan, and the members of the California Damages Class have been damaged in an amount to be determined at trial.

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT VI

### (VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS §§ 505/1, *ET SEQ.*) AND THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS §§ 510/1, *ET SEQ.*) ON BEHALF OF THE ILLINOIS INJUNCTIVE RELIEF CLASS)

331.    Cinar repeats and realleges reallege ¶¶ 1-247 of this complaint as if fully set forth herein.

332.    This Count is brought on behalf of the Illinois Injunctive Relief Class.

333.    The Illinois Injunctive Relief Class and Defendants are each "persons" under 815 ILCS § 505/1(c) and 815 ILCS § 510/1(5).

334.    Defendants engaged in deceptive acts or practices by making false and misleading representations to the public about the reliability and accuracy of the information on World-Check, representing the database on its lseg.com website as "delivering accurate and reliable information", that its researchers rely on information from "reliable and reputable sources", that World-Check "h[as] in place robust controls designed to ensure that information about you on World-Check is accurate, relevant and not excessive", that World-Check "compl[ies] with detailed research and screening processes for sourcing World-Check information and we monitor compliance with these processes", and that World-Check "make[s] extensive efforts to prevent inaccurate, outdated, irrelevant or excessive personal information being processed on World-Check." At the same time, Defendants cite and provide inaccurate and unreliable information from the Turkish government.

335.    Defendants' conduct was deceptive because their misrepresentations had the capability or tendency to deceive, and on information and belief did deceive, reasonable consumers, such as Bank of America, who depended on World-Check to make decisions about whether to conduct business with Cinar and members of the Illinois Injunctive Relief Class.

336.    On information and belief, these World-Check subscribers, such as

-43-

FIRST AMENDED CLASS ACTION COMPLAINT

Bank of America, were deceived by Defendants' misrepresentations that Cinar and members of the Illinois Injunctive Relief Class belong to a terrorist organization, believing this information to be "accurate and reliable", as represented on the lseg.com website.

337.    Defendants engaged in unfair acts or practices by engaging in activity that is considered immoral, unethical, oppressive, or unscrupulous because they require the victim of the false and misleading information to notify Defendants of such false and misleading information, which Defendants knew or should have known was false and misleading; however, those victims are unaware that the Defendants do not take any meaningful steps to remove the stigma of being accused of being a terrorist, and causing substantial injury to Illinois citizens, including consumers, harmed by the false and misleading information contained on the profiles of the members of the Illinois Injunctive Relief Class.

338.    Defendants intended for consumers to rely on such deceptive and unfair acts or practices, and its consumers in fact did rely on such misrepresentations.

339.    Defendants made misrepresentations on its website as to the accuracy and reliability of the information on World-Check with the intention of inducing companies with risk intelligence needs to purchase a subscription to World-Check.

340.    On information and belief, World-Check subscribers would not have purchased World-Check but for their understanding and representations that the information contained therein is accurate and reliable.

341.    On information and belief, World-Check subscribers believed Defendants' claims on its website that the information on World-Check is accurate and reliable, including in the profiles of Cinar and members of the Illinois Injunctive Relief Class, and, as a result, World-Check subscribers closed the accounts of the members of the Illinois Injunctive Relief Class, or otherwise deprived them of the ability to conduct their business, as explained in ¶ 161.

342.    Defendants' deceptive and unfair acts or practices occurred in the course

-44-

of conduct of trade or commerce because it involves the sale of its World-Check product in the marketplace.

343.  On information and belief, World-Check's subscribers relied on Defendants' unfair or deceptive trade acts or practices to the detriment of Cinar and the Illinois Injunctive Relief Class.

344.  Cinar and members of the Illinois Injunctive Relief Class suffered economic damages because, on information and belief, their accounts, including those they rely on to conduct business, were closed because of the false and misleading information about them on World-Check.  Cinar and the members of the Illinois Injunctive Relief Class also face emotional and reputational harms because of being tagged as terrorists on World-Check and World-Check's subscribers being exposed to that inaccuracy, as explained in ¶ 162.

345.  On information and belief, based on Defendants' misrepresentations as to the accuracy and reliability of the information contained in World-Check, World-Check's subscribers relied on the inaccurate and unreliable information they received from World-Check on the members of the Illinois Injunctive Relief Class, and as a result many of World-Check's subscribers refused to do business with the members of the Illinois Injunctive Relief Class.

346.  Defendants' unfair and deceptive trade practices caused substantial injury and damage to the Illinois Injunctive Relief Class because, absent Defendants' unfair and deceptive conduct, World-Check's subscribers would not have closed the Illinois Injunctive Relief Class's accounts or otherwise decided not to do business with them, which resulted in financial harm to the Illinois Injunctive Relief Class.

347.  Defendants' deceptive and unfair acts or practices are directed at the market generally because the misrepresentations as to the accuracy and reliability of the information on World-Check are displayed on Defendants' lseg.com website, which is accessible by the public and any potential subscribers.

348.  Defendants' deceptive and unfair acts or practices generally affects

-45-

consumer protection concerns because hundreds of individuals have been flagged in World-Check as associates of FETÖ.

349.   World-Check is used by many of the largest financial institutions, government and intelligence agencies, pre-employment vetting agencies, and law firms, and therefore, it is highly likely that many consumers have been exposed both to the false and misleading information on World-Check regarding the members of the Illinois Injunctive Relief Class and the deceptive statements regarding the accuracy and reliability of the information on World-Check.

350.   Absent an injunction by the Court directing the Defendants to remove references to Plaintiffs and members of the Illinois Injunctive Relief Class from World-Check as associates of FETÖ and other implications that they are terrorists, the Illinois Injunctive Relief Class will continue to suffer harm at the hands of the Defendants because World-Check subscribers are unlikely to re-open closed accounts and members of the Illinois Injunctive Relief Class are likely to face future account closures and refusals by World-Check subscribers to do business with them.

351.   An injunction would serve the interests of consumers as well as members of the Illinois Injunctive Relief Class because removing the false and misleading records about members of the Illinois Injunctive Relief Class from World-Check would result in Defendants providing World-Check subscribers with the advertised reliable and accurate information.

352.   By reason of the foregoing, Plaintiffs and the Illinois Injunctive Relief Class seek injunctive relief.

353.   Cinar and the Illinois Injunctive Relief Class have no adequate remedy at law.

354.   A copy of this Complaint shall be mailed to the Illinois Attorney General in accordance with 815 ILCS § 505/10a (d).

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT VII

**(DEFAMATION PURSUANT TO ILLINOIS LAW ON BEHALF OF THE ILLINOIS DAMAGES CLASS)**

355.    Cinar repeats and realleges ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

356.    This Count is brought on behalf of the Illinois Damages Class.

357.    Defendants have published on World-Check records regarding Cinar and members of the Illinois Damages Class, falsely designating them as members of a terrorist organization, as explained in ¶¶ 158-160.

358.    Cinar and members of the Illinois Damages Class are private, not public, figures under First Amendment standards.

359.    Defendants knew that its defamatory statements were false or lacked reasonable grounds for their belief that its statements were true because Plaintiffs have explained to Defendants that the statements were false and because neither the United States, nor any other government outside of Turkey, recognizes alleged members of the GM as terrorists.

360.    On information and belief, the libelous World-Check records on the members of the Illinois Damages Class were viewed by World-Check subscribers.

361.    The libelous records are defamatory *per se* because Defendants' allegations that the Illinois Damages Class are affiliated with a terrorist organization are words that impute commission of a crime.

362.    The libelous records published by Defendants about the Illinois Damages Class have caused them injury to their reputations such that World-Check's subscribers refuse to do business with them because of these libelous statements, as explained in ¶ 162.

363.    Defendants' libel has caused special damages in the form of economic loss, emotional distress, and reputational harm, as explained in ¶ 162.

-47-
FIRST AMENDED CLASS ACTION COMPLAINT

364.   On information and belief, Defendants regularly republish the libelous records on World-Check and direct the republications to each new subscriber.

365.   Because of the foregoing, the Illinois Damages Class has been damaged in an amount to be determined at trial.

## COUNT VIII

**(DEFAMATION PURSUANT TO MARYLAND COMMON LAW ON BEHALF OF THE MARYLAND DAMAGES CLASS)**

366.   Plaintiffs repeat and reallege ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

367.   This Count is on behalf of the Maryland Damages Class.

368.   Defendants have published on World-Check records about the members of the Maryland Damages Class, falsely designating them as members of a terrorist organization.

369.   On information and belief, World-Check subscribers viewed the defamatory World-Check records on the members of the Maryland Damages Class.

370.   Defendants knew or disregarded clear evidence that its defamatory statements were false because neither the United States, nor any other government outside of Turkey, recognizes alleged members of the GM as terrorists.

371.   The libelous information is defamatory *per se* because Defendants' representations that members of the Maryland Damages Class are affiliated with a terrorist organization are statements falsely attributing criminality.

372.   The libelous records published by Defendants about members of the Maryland Damages Class have exposed them to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, them as evidenced by the refusal of World-Check's subscribers to do business with them because of these libelous statements.

373.   Defendants' defamation has caused special damages in the form of economic loss, emotional distress, and reputational harm.

-48-

FIRST AMENDED CLASS ACTION COMPLAINT

374.   On information and belief, Defendants regularly republish the defamatory records on World-Check and directs the republications to each new subscriber.

375.   Because of the foregoing, the Maryland Damages Class has been damaged in an amount to be determined at trial.

## COUNT IX

### (DEFAMATION PURSUIT TO NEW JERSEY LAW ON BEHALF OF THE NEW JERSEY DAMAGES CLASS)

376.   Atak repeats and realleges ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

377.   This Count is brought on behalf of the New Jersey Damages Class.

378.   Defendants have published on World-Check records about the Plaintiffs and members of the New Jersey Damages Class, falsely designating them as members of a terrorist organization.

379.   On information and belief, World-Check subscribers viewed the defamatory World-Check records on the members of the New Jersey Damages Class.

380.   Defendants knew or disregarded evidence that its defamatory statements were false because neither the United States, nor any other government outside of Turkey, recognizes alleged members of the GM as terrorists.

381.   The libelous records are defamatory *per se* because Defendants' representations that Plaintiffs and members of the New Jersey Damages Class are affiliated with a terrorist organization are statements falsely attributing criminality.

382.   The libelous records published by Defendants about Plaintiffs and members of the New Jersey Damages Class have lowered their reputations in the estimation of the community or deterred third persons from associating with them such that World-Check subscribers refuse to do business with them, see ¶¶ 138-142, *supra*.

383.   Defendants' defamation has caused special damages in the form of

-49-

FIRST AMENDED CLASS ACTION COMPLAINT

economic loss, emotional distress, and reputational harm, see ¶¶ 143, *supra*.

384.   On information and belief, Defendants regularly republish the defamatory information on World-Check and direct the republications to each new client. For instance, on January 20, 2023, Defendants republished and modified Atak's record on World-Check with new information, see ¶ 137, *supra*.

385.   Because of the foregoing, the New Jersey Damages Class has been damaged in an amount to be determined at trial.

## COUNT X

### (VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW (N.Y. GBL § 349) ON BEHALF OF THE NEW YORK INJUNCTIVE RELIEF CLASS)

386.   Plaintiffs repeat and reallege ¶¶ 1-247 of this complaint as if fully set forth herein.

387.   This Claim is brought on behalf of the New York Injunctive Relief Class.

388.   Defendants' acts or practices are consumer-oriented because Defendants placed and published misrepresentations about the accuracy and reliability of World-Check prominently on its publicly available website, lseg.com, as a way of advertising to potential subscribers, and directed these advertisements to the consuming public.

389.   Defendants' acts or practices have a broader impact on consumers at large because hundreds of individuals have been flagged in World-Check as associates of FETÖ based on information provided to Defendants by the Turkish government, and because World-Check is used by many of the largest financial institutions, government and intelligence agencies, pre-employment vetting agencies, and law firms and therefore it is highly likely a large number of consumers have been exposed both to the false and misleading information on World-Check about the

FIRST AMENDED CLASS ACTION COMPLAINT

members of the New York Injunctive Relief Class and the deceptive statements on the accuracy and reliability of the information on World-Check.

390.   Defendants engaged in deceptive acts or practices in the conduct of its business or in furnishing services by misleadingly portraying, on its website, that World-Check is "delivering accurate and reliable information" and that its researchers rely on information from "reliable and reputable sources", while providing inaccurate and unreliable information about members of the New York Injunctive Relief Class furnished by the Turkish government.

391.   Defendants' conduct was deceptive because its misrepresentations were likely to mislead, and on information and belief did mislead, reasonable consumers acting reasonably under the circumstances who depended on World-Check to make decisions about whether to conduct business with members of the New York Injunctive Relief Class.  On information and belief, World-Check's subscribers were deceived by Defendants' misrepresentations that the information on World-Check was accurate and reliable and therefore trusted World-Check's false and misleading information that members of the New York Damages Class are members of a terrorist organization.

392.   Members of the New York Injunctive Relief Class suffered economic damages because their accounts, including those they rely on to conduct business, were closed because of the false and misleading information about them on World-Check.  The members of the New York Injunctive Relief Class also face emotional and reputational harms as a result of being flagged as terrorists on World-Check and World-Check's customers are exposed to that inaccuracy.

393.   On information and belief, based on Defendants' misrepresentations as to the accuracy and reliability of the information contained in World-Check, World-Check's subscribers relied on the inaccurate and unreliable information they received from World-Check regarding the members of the New York Injunctive Relief Class, and as a result many of World-Check's subscribers refused to do business with the

-51-

members of the New York Injunctive Relief Class.

394.    Defendants' deceptive acts or practices actually and proximately caused injury and damage to members of the New York Injunctive Relief Class because, absent Defendants' deceptive acts or practices, World-Check subscribers would not have engaged Defendants' World-Check services, and they would not have closed the accounts of members of the New York Injunctive Relief Class or otherwise decided not to do business with them.

395.    Absent an injunction by the Court directing the Defendants to remove references to Plaintiffs and members of the New York Injunctive Relief Class from World-Check as associates of FETÖ and other implications that they are terrorists, the New York Injunctive Relief Class will continue to suffer harm at the hands of the Defendants because World-Check subscribers are unlikely to re-open closed accounts and members of the New York Injunctive Relief Class are likely to face future account closures and refusals by World-Check subscribers to do business with them.

396.    The New York Injunctive Relief Class has no adequate remedy at law.

397.    By reason of the foregoing, the New York Injunctive Relief Class seeks injunctive relief.

## COUNT XI

### (DEFAMATION PURSUANT TO NEW YORK LAW ON BEHALF OF THE NEW YORK DAMAGES CLASS)

398.    Plaintiffs repeat and reallege ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

399.    This Count is brought on behalf of the New York Damages Class.

400.    Defendants have published on World-Check records regarding the members of the New York Damages Class, falsely designating them as members of a terrorist organization.

401.    Defendants knew or disregarded clear evidence that its defamatory statements were false because neither the United States, nor any other government

-52-

FIRST AMENDED CLASS ACTION COMPLAINT

outside of Turkey, recognizes alleged members of the GM as terrorists.

402.   On information and belief, World-Check subscribers viewed the libelous World-Check records regarding the members of the New York Damages Class .

403.   The libelous records are defamatory *per se* because Defendants' representations that members of the New York Damages Class are affiliated with a terrorist organization are charges of a serious crime.

404.   The libelous records published by Defendants about members of the New York Damages Class have exposed them to public contempt, ridicule, aversion, or disgrace, or induced an evil opinion of them and deprived them of their friendly intercourse in society, as evidenced by refusal of World-Check subscribers to do business with them because of these libelous statements.

405.   Defendants' defamation has caused special damages in the form of economic loss, emotional distress, and reputational harm.

406.   On information and belief, Defendants regularly republish the libelous records on World-Check and directs the republications to each of its clients.

407.   Because of the foregoing, the New York Damages Class has been damaged in an amount to be determined at trial.

## COUNT XII

**(DEFAMATION PURSUANT TO PENNSYLVANIA COMMON LAW AND 42 PA. C.S.A. §§ 8341, *ET SEQ.* ON BEHALF OF THE PENNSYLVANIA DAMAGES CLASS)**

408.   Yayla repeats and realleges ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

409.   This Count is brought on behalf of the Pennsylvania Damages Class Defendants have published on World-Check records about the Plaintiffs and members of the Pennsylvania Damages Class, falsely designating them as members

-53-

FIRST AMENDED CLASS ACTION COMPLAINT

1   of a terrorist organization.

2   410.   Defendants knew or disregarded evidence that its defamatory statements

3   were false because Yayla has explained to Defendants that the statements were false,

4   see *supra* at ¶¶ 127 and 131, and because neither the United States, nor any other

5   government outside of Turkey, recognizes alleged members of the GM as terrorists.

6   411.   On information and belief, World-Check subscribers viewed the

7   defamatory World-Check records on Yayla and the members of the Pennsylvania

8   Damages Class.

9   412.   World-Check's subscribers were the recipients of the libelous records,

10  and, upon information and belief, they understood the defamatory meaning of the

11  records when they closed the accounts of Yayla and members of the Pennsylvania

12  Damages Class or otherwise refused to do business with them.

13  413.   The libelous reports are defamatory *per se* because Defendants'

14  representations that Yayla and members of the Pennsylvania Damages Class are

15  affiliated with a terrorist organization are charges of a serious crime.

16  414.   The defamatory records published by Defendants about Yayla and

17  members of the Pennsylvania Damages Class have harmed their reputation and

18  lowered them in the estimation of the community or deterred third persons from

19  associating or dealing with them, as evidenced by the refusal of World-Check's

20  subscribers to do business with them because of these defamatory statements.

21  415.   Defendants' defamation has caused special damages in the form of

22  economic loss, emotional distress, and reputational harm, see ¶¶ 135, *supra*.

23  416.   On information and belief, Defendants regularly republish the libelous

24  records on World-Check and directs the republications to each of its subscribers.

25  417.   Because of the foregoing, the Pennsylvania Damages Class has been

26  damaged in an amount to be determined at trial.

27

28

-54-

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT XIII

### (DEFAMATION PURSUANT TO VIRGINIA LAW ON BEHALF OF THE VIRGINIA DAMAGES CLASS)

418.    Plaintiffs repeat and reallege ¶¶ 1-247 and 280-291 of this complaint as if fully set forth herein.

419.    This Claim is brought on behalf of the Virginia Damages Class.

420.    Defendants have published on World-Check purportedly factual records about members of the Virginia Damages Class, falsely designating them as members of a terrorist organization.

421.    Defendants knew or disregarded clear evidence that their defamatory statements were false because neither the United States, nor any other government outside of Turkey, recognizes alleged members of the GM as terrorists.

422.    On information and belief, World-Check subscribers viewed the libelous World-Check records on the members of the Virginia Damages Class.

423.    The libelous records are defamatory *per se* because Defendants' representations that members of the Virginia Damages Class are affiliated with a terrorist organization, which is a claim that attributes to them the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.

424.    The libelous records published by Defendants about members of the Virginia Damages Class have harmed their reputation and lowered them in the estimation of the community or deterred third persons from associating or dealing with them, as evidenced by the refusal of World-Check's subscribers to do business with them because of these libelous statements.

425.    Defendants' defamation has caused special damages in the form of economic loss, emotional distress, and reputational harm.

426.    On information and belief, Defendants regularly republish the

FIRST AMENDED CLASS ACTION COMPLAINT

defamatory records on World-Check and direct the republications to each new subscriber.

427. Because of the foregoing, the Virginia Damages Class has been damaged in an amount to be determined at trial.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. Declare that the allegations contained herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure for both damages under Rule 23(b)(3) and injunctive relief under Rule 23(b)(2);

B. Issue an order certifying the class/classes as defined above, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel;

C. Declare that the allegations contained herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure for both damages under Rule 23(b)(4), issue an order certifying a class as defined above, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel;

D. Order Injunctive relief directing the Defendants to remove the names of members of the Nationwide Injunctive Relief Class from the World Check database as associates of FETÖ and/or terrorism, and to refrain in the future from identifying people as associates of FETÖ and/or terrorism based on their identification as such on a terrorist or similar watch list generated by Turkey;

E. Award Damages pursuant to 18 U.S.C. § 1964(c) to members of the Classes' business or property according to the proof;

F. Award Economic, reputational and non-economic damages, including emotional distress damages, according to proof, for the State Damages Classes;

G. Award reasonable attorney's fees, experts' fees, and costs; and

H. Provide other relief as the Court deems appropriate.

FIRST AMENDED CLASS ACTION COMPLAINT

Dated: January 22, 2024              Respectfully submitted,

                                     **MCLANE, BEDNARSKI**
                                     **+ LiTT, LLP**

                                     By: */s/ Barrett S. Litt*
                                          Barrett S. Litt

                                     Robert S. Schachter (*pro hac vice*)
                                     Susan Salvetti (*pro hac vice*)
                                     Jessica C. Hermes (*pro hac vice*)
                                     **ZWERLING, SCHACHTER &**
                                     **ZWERLING, LLP**

                                     Ahmet Seyithanoglu (*pro hac vice*)
                                     **SEYITHAN LAW PC**

                                     *Attorneys for Plaintiffs*

                            **JURY DEMAND**

     Plaintiffs hereby demand a jury trial.

Dated: January 22, 2024              Respectfully submitted,

                                     **MCLANE, BEDNARSKI**
                                     **+ LiTT, LLP**

                                     By: */s/ Barrett S. Litt*
                                          Barrett S. Litt

                                     Robert S. Schachter (*pro hac vice*)
                                     Susan Salvetti (*pro hac vice*)
                                     Jessica C. Hermes (*pro hac vice*)
                                     **ZWERLING, SCHACHTER &**
                                     **ZWERLING, LLP**

                                     Ahmet Seyithanoglu (*pro hac vice*)
                                     **SEYITHAN LAW PC**

                                     *Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT